valuation of personal property, and no tax on personal property shall be re-
mitted, cancelled or reduced unless the person aggrieved shall satisfy the
board of taxes or assessments that illness or absence from the city had pre-
vented the filing of the complaint or making the application to the said board
within the time allowed by law for the correction of taxes."

This provision, however, may not be invoked in this proceeding.
This is a provision of grace. The board may reduce "where in the
opinion of the corporation counsel lawful cause therefor is shown";
but it requires a majority of the commissioners to reduce the assessed
valuation of personal property, and then it shall not be so reduced
"unless the person aggrieved shall satisfy the board of taxes and as-
sessments that illness or absence from the city had prevented the filing
of the complaint or making the application to the said board within
the time allowed by law for the correction of taxes."

But this is a certiorari to review or correct on the merits the final
determination of the board, and that determination was the assess-
ment. The allegation of the petitioner is that during the month of
May he made application for the correction of said assessment, but
that said assessors have refused to make such correction. His proof
was that on one occasion he saw President Wells, and that Wells
said petitioner was too late, and that he had no power to do any thing
for him. If the statement of the president of the board be taken at
its full value as a refusal of the board to act in the matter at all for
alleged want of power, that does not aid the relator here, and is not to
be reviewed upon certiorari. The remedy has been clearly indicated by
the Court of Appeals in People ex rel. N. Y. Hotel & Restaurant Co.
v. Barker, 140 N. Y. 437, 35 N. E. 657, 23 L. R. A. 785, to have been
an application to Special Term for a writ of mandamus directed to
the commissioners commanding them to entertain and consider the
application for the cancellation of the assessment. Of course manda-
mus will not lie to compel the board to act in a particular way upon
such application for there is, after they have acted, an adequate remedy
at law to review the decision, that is by certiorari under the tax law.
People ex rel. Bliss v. Feitner, 72 App. Div. 45, 76 N. Y. Supp. 219.

The order appealed from must be reversed, and the proceeding dis-
missed, with costs to the appellants. All concur.

---

(110 App. Div. 294.)

In re STICKNEY'S ESTATE.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. STATUTES—PASSAGE OF TAX LAWS—PRESENCE OF THREE-FIFTHS QUORUM.
    Const. art. 3, §25, providing that upon the final passage of any act
    imposing a tax three-fifths of the members elected to either house shall
    be necessary to constitute a quorum, is applicable to collateral inheritance
    or transfer tax laws.
    [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §22.]

2. SAME—PUBLICATION—STATEMENT OF PASSAGE.
    It is competent for the Legislature to enact rules of evidence such as
    Legislative Law, Laws 1894, p. 124, c. 53, §44, providing that the state-
    ment of the Secretary of State appended to a law as published shall be

presumptive evidence that the original law was certified by the presiding officer of each house in the manner stated.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 59.]

**3. SAME—EFFECT OF STATEMENT.**

Legislative Law, Laws 1894, p. 124, c. 53, § 44, providing that the statement of the Secretary of State appended to a law as published shall be presumptive evidence that the original law was certified by the presiding officer of each house in the manner stated, makes the statement of the Secretary of State only presumptive evidence of the facts stated, and recourse may be had to the certificates themselves to determine what was actually certified.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 383, 384.]

**4. SAME—CERTIFICATE OF PRESIDING OFFICER—AMENDMENT.**

The speaker of the assembly has no power, after the expiration of the year for which he is elected and of the life of the assembly which elected him, to amend of his own motion his original certificate to a bill passed by the assembly, so as to give vitality to that bill.

**5. SAME—CONCLUSIVENESS OF CERTIFICATE.**

Const. art. 3, § 11, requires each house of the Legislature to keep a journal of its meetings. Section 25 of the same article provides that on the final passage of any act which imposes a tax the question shall be taken by yeas and nays," which shall be duly entered upon the journals," and three-fifths of all the members of either house shall be necessary to constitute a quorum. Legislative Law, Laws 1894, p. 123, c. 53, § 40, requires the presiding officer of the Legislature to append to a bill a certificate stating the presence of the required quorum on the passage of the bill, and provides that no bills shall be deemed to have so passed unless so certified, and makes the certificate conclusive evidence of the facts certified. *Held*, that the legislative law, in so far as it assumes to make the certificate conclusive evidence, is unconstitutional, and if a tax bill is actually passed in the presence of the required quorum, and that fact appears on the journals of the respective houses, and it is subsequently approved by the Governor, it becomes a law, regardless of whether the presiding officers have properly certified the same, and the journals may be resorted to in order to show that the required quorum was present.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 383, 384.]

Appeal from Surrogate's Court, New York County.

In the matter of the transfer tax upon the estate of Joseph Stickney, deceased. From an order of the Surrogate's Court, affirming an order of the surrogate fixing a tax on real property devised to the widow, the executrix, executor, and devisees of said deceased appeal. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Edward Mitchell, for appellants.

Geo. M. Judd, for respondent.

LAUGHLIN, J. The tax purports to be authorized by chapter 41, p. 165, of the Laws of 1903, and it has been imposed pursuant to the provisions thereof. The question presented by the appeal is whether that statute can be given any force or effect as a tax measure, and, since it has no other effect, the practical question is whether it ever became a law. There is no doubt that it was competent for the Legis-

lature to enact the statute. The validity of the statute is questioned on constitutional grounds, but not for want of power on the part of the Legislature to enact it. It was a tax measure, for it purported to impose a tax upon certain transfer of property by will and under the intestacy laws. The learned counsel for the appellant insists that it required a majority vote in each house in the presence of three-fifths of the members elected thereto as the constitutional quorum for such legislation (article 3, § 25). The learned counsel for the Comptroller, however, draws attention to the fact that the preceding section (24) of article 3 of the state Constitution, which provides that "every law which imposes, continues or revives a tax shall distinctly state the tax and the object of the tax to which it is applied, and it shall not be sufficient to refer to any other law to fix such tax or object," has been held inapplicable to the transfer tax, so called, and has been construed as applying only to the general taxes annually imposed. Matter of McPherson, 104 N. Y. 306, 10 N. E. 685, 58 Am. Rep. 502. The phraseology, "which imposes, continues or revives a tax," is the same in the succeeding section (25), which prescribes the vote and quorum. I think that the controlling point in that case was the difficulty of stating in every special tax law the purpose to which the tax is to be applied, and especially in transfer tax legislation, so called, which was designed to operate continuously, thus becoming a permanent tax measure. There is no difficulty in conforming with the requirements of said section 25 in the enactment of every tax law, special as well as general; and consequently the reason that appears to have been controlling in Matter of McPherson does not exist for declaring it inapplicable to tax laws special in their nature, as distinguished from the annual tax laws, which, in addition to authorizing the annual tax levy, contain an appropriation of the funds. I am therefore disinclined to regard that case as decisive of the question now under consideration. The so-called collateral inheritance or transfer tax law is a tax law pure and simple; and, there being no insuperable obstacle to complying with the provisions of said section 25 in its enactment or in the enactment of amendments thereto, I see no reason for exempting such laws from its operation.

The precise claim of the appellant is that the constitutional three-fifths quorum was not present in either house when the amendment of 1903 was passed. This stand is not taken upon the facts; but it is contended that the condition of the statutory law with respect to the certification and publication of bills is such that upon the certificates originally attached to this bill, by the presiding officers of the Senate and Assembly, respectively, a conclusive presumption arises that three-fifths of the members elected to each house were not present when the bill was passed. The bill, as printed in the Session Laws, shows after the title of the bill the following:

"Became a law March 16, 1903, with the approval of the Governor. Passed, a majority being present."

· Section 44 of the legislative law (Laws 1894, p. 124, c. 53) provides, among other things, that the Secretary of State in the publication of every law shall omit the certificate of the presiding officer of the respective houses attached thereto, and shall add to the statute that it

became a law on a specified date, with or without the approval of the Governor, or notwithstanding his objection, with the words "Passed by a two-thirds vote," "Passed, three-fifths being present," or "Passed, a majority being present," in accordance with the certificates appended to the original bill. This section further provides that:

"Such statement shall be presumptive evidence that the original law was certified by the presiding officer of each house accordingly."

It is, of course, competent for the Legislature to enact rules of evidence; and such is the statutory provision last quoted. The statute, therefore, as printed in the Session Laws only showed a majority present when it was passed, which, I think, would be insufficient.

But inasmuch as the statement printed in the Session Laws is only presumptive evidence as to what is shown by the certificates of the respective presiding officers appended to the original bill, recourse must next be had to the certificates themselves. The body of the original certificate appended to the original bill certified by the presiding officer of the Senate is as follows:

"This bill was duly passed, a majority of all the members elected voting in favor thereof."

And the original certificate of the presiding officer of the Assembly is in the same form, except that after the word "elected" the words "to the Assembly" appear in addition. On the 30th day of June, 1904, amended certificates, made on the 25th day of June, 1904, by the presiding officer of the Senate for the year 1903, and by the presiding officer of the Assembly for 1903 on the 30th day of June, 1904, under date of the original certificates, and in the same form, but with the words "three-fifths being present" added thereto, and accompanied by the affidavit of each of said presiding officers setting forth a transcript of the journal of the proceedings of each house on the passage of the bill, showing that the vote was taken and recorded by the yeas and nays, and that more than three-fifths of the members elected to each house were present, and more than a majority voted in favor thereof, were filed with the Secretary of State and attached to the original bill. If the original certificates had been in the form of the amended certificates, they would be sufficient, and there would be no doubt as to the validity of the statute.

It is claimed that the respective presiding officers became functus officio, and that their certificates are nullities. The Assembly, of course, is not a continuous body. It expires with the legislative year. Not so, however, with the Senate. Its official life is two years, and the Senate for the years 1903 and 1904 was the same body. It organized at the outset for two years. Its committees and officers, including the presiding officer, remained the same and acted by the original authority throughout. The presiding officer of the Senate, therefore, was not functus officio on the theory that he had gone out of office. The presiding officer of the Assembly happened to be the same for both years, but he was selected annually, and acted each year by separate authority. In 1904, therefore, when he assumed to act for the Assembly of 1903, that body had expired, and with it at the close of the year 1903 terminated his authority to represent it. The courts

have at times by mandamus required officers and boards as bodies whose official terms had expired, or their successors, to perform an omitted ministerial duty of great public importance. In those cases, however, there is first an adjudication as to the omitted duty, and a judicial direction as to what is to be performed. It should not be within the power of the presiding officer of the Senate or Assembly to nullify the will of the Legislature by omitting to append the requisite certificate to a bill or by appending one that is erroneous; but whether public policy required that this must be discovered and corrected before the bill goes to the Governor or to the Secretary of State, or whether thereafter performance of the omitted duty may be compelled by the courts, need not now be decided.

It was contended in the court below that the amended certificates were valid, and that they cured the defect. The learned counsel for the respondent appears to have abandoned that position on the appeal. With the evidence in the record, however, the question arises and must be decided; for its decision will determine whether it is necessary to consider the other questions that become material only in the event that the amended certificates are declared to be ineffectual. On a question of such great importance and grave consequences, judicial opinions should be confined to a decision on the facts presented. If either amended certificate be a nullity, it is the same as if neither had been made. We regard it as quite clear that the speaker of the Assembly for 1903 could not, in June, 1904, of his own motion, call at the office of the Secretary of State and make any substitution, alteration, or addition to his original certificate attached to the original bill that would give the bill vitality. If the bill had no force or effect as a law for more than a year after its passage, when on its face it purported to take effect immediately, the proposition that it could not thus be given life is too plain for argument. Obviously the consequences of a contrary ruling would be disastrous. There would then be no certainty even as to the statutory law. The presiding officer of either body, after the adjournment of the Legislature, and even after the body which enacted the law ceased to exist, could call at the office of the Secretary of State and so alter his certificate that that which was law before would be law no longer, and that which was not law would be infused with life. It is manifest, therefore, that the amended certificates must be disregarded.

The original certificates to which we are confined, like the certificate of the Secretary of State printed in the Session Laws, fail to show, as has been seen, that the constitutional three-fifths quorum was present in each house when the bill was passed, and it must fail unless recourse may be had to the journals of the respective houses. Section 40 of the legislative law (Laws 1894, p. 123, c. 53) is as follows:

"Certificate of the presiding officer.—Upon the passage of a bill or concurrent resolution by either house, the presiding officer thereof shall append to such bill or resolution, a certificate of the date of its passage by the votes of a majority of all the members elected to such house; or in the presence of three-fifths of such members, if such be the case; or by the votes of two-thirds of all the members elected to such house, as the case may be. No bills shall be deemed to have so passed unless certified by the presiding officer, which certificate to such effect shall be conclusive evidence thereof."

The learned counsel for the appellant contends that the Legislature, acting within its province to prescribe rules of evidence, has by this statute prescribed a conclusive rule of evidence for determining whether a bill has been passed by the requisite vote and with the requisite quorum present. Literally construed, this statute provides that no bill requiring the presence of three-fifths of the members elected to each house shall be deemed to have passed in the presence of such quorum unless the presiding officer appends a certificate thereto to that effect; and if he does so certify, that shall be conclusive, even though it be untrue, either through mistake or design. There is a conflict in judicial decisions, leaving the law in a doubtful and unsettled state, as to whether and when resort may be had to the journals of the respective houses to show by what vote a bill was passed and the number of members present. I think this is largely owing to a failure to distinguish between the power of the Legislature to enact rules of evidence in general, where it is unrestricted by the Constitution, and its power to enact rules of evidence with respect to the proving the enactment of statutes where the Constitution itself prescribes how the vote shall be taken, how the number of members present shall be shown, and how the record thereof shall be made and preserved. Section 11 of article 3 of the state Constitution requires that each house shall keep a journal of its meetings. Section 25 of article 3 of the state Constitution provides that:

"On the final passage, in either house of the Legislature, of any act which imposes, continues or revives a tax, or creates a debt or charge, or makes, continues or revives any appropriation of public or trust money or property, or releases, discharges or commutes any claim or demand of the state, the question shall be taken by yeas and nays, which shall be duly entered upon the journals, and three-fifths of all the members elected to either house shall, in all such cases, be necessary to constitute a quorum therein."

There is much force in the contention that these constitutional provisions constitute the journals the original evidence of the vote and quorum present on the passage of bills and were designed to afford definite and conclusive evidence of those facts. Cooley's Const. Lim. (7th Ed.) 201. The journals are kept under the direction of the respective legislative bodies, and are scrutinized, corrected, and approved after being written out. It is, of course, competent for the Legislature to provide secondary evidence of what these journals show as to the vote and quorum; and it would be quite inconvenient, and might endanger the permanency of the records, to be obliged in all cases to have recourse to the original journals. I know of no authority found in the Constitution or elsewhere by which it is competent for the Legislature this year to prescribe that the will of the people, manifested through their chosen senators and members next year, and recorded and authenticated as provided by the Constitution for the enactment of a valid law, may be thwarted, because, forsooth, the Legislature this year has assumed to enact as a rule of evidence that if the respective presiding officers shall fail to certify the passage of the bill correctly it shall not become a law. It seems to me this is tantamount to holding that the Legislature, itself the creature of the Constitution, is superior to its creator, and may add to the con-

stitutional requirements as to what is essential to the enactment of a particular law.   If this section of the legislative law be valid, the law-making power has been transferred to the presiding officers; and if they should certify erroneously that a bill had passed which in fact had failed of passage, or should fail to certify to the passage of a bill passed by the requisite vote and with a quorum present, the bill which did not pass would become a valid law and the bill which did would not.   I am of opinion that the law ought to be and is that if a bill be passed by the essential constitutional vote and in the pres-ence of the requisite constitutional quorum, and these facts be duly recorded in the journals of the respective houses as required by the Constitution, and the bill subsequently receives the executive approval or the constitutional equivalent or substitute therefor, it becomes a law, regardless of whether the respective presiding officers have per-formed their duties with respect to certification enjoined on them by the Legislature.   The Constitution recognizes only the Assembly, Sen-ate, and Governor as the lawmaking power, and it does not vest the presiding officer of either body with any authority to defeat the legis-lative will.

I am aware that there are judicial decisions entitled to great weight holding that on grounds of public policy it is better that the due passage of a law should be determined by an examination of the cer-tificates attached thereto, rather than by consulting the journals of the legislative bodies, and, as it is not necessary to decide the question now, it will be left open.   It was entirely competent for the Legisla-ture to make those certificates presumptive evidence of the facts, and to declare that presumptively a bill should not be deemed passed by the necessary vote and with the necessary quorum present unless so certified; but, in so far as it attempted to make the certificate con-clusive evidence on those points, I think it exceeded its authority. It is perhaps unnecessary to lay down even this broad doctrine in the case at bar.   Some of the authorities are to the effect that the jour-nals may be resorted to, not for the purpose of impeaching, but to supplement, the certificates of the presiding officers, where they are defective.   Under a literal reading of the statute (section 40, of the legislative law, which is in the disjunctive) it would not seem neces-sary that the certificate should show that a majority voted for the bill, but only that it passed with three-fifths present, yet doubtless they should show both facts.   It has been held in analogous cases that where the certificates do not show all the essential facts they are de-fective, and that the omission therein of the requisite vote or quorum may be supplied by the journals, notwithstanding the fact that the statute expressly provides that in the absence from the certificate of the essential requirement to the valid enactment of the bill it shall be deemed not to have been passed by the requisite vote or quorum. Rumsey v. N. Y. & N. E. R. R., 130 N. Y. 88, 28 N. E. 763; Mat-ter of New York & Long Island Bridge, 148 N. Y. 540, 42 N. E. 1088; People ex rel. Scott v. Supervisors, 8 N. Y. 317; Purdy v. People, 4 Hill, 384.   In Peo. ex rel. Purdy v. Com. of Highways, 54 N. Y. 276, 13 Am. Rep. 581, the constitutional provisions as to the journals of the respective houses or their effect as evidence do

not seem to have been considered, and the decision therein is inconsistent with the later opinions of the same court. According to the doctrine of those cases, therefore, the statute, in so far as it declares that a bill shall not be deemed to have passed by the requisite vote or in the presence of the necessary quorum, is not in any event to be deemed conclusive as to essential facts not expressly certified. By analogous reasoning a certification of the fact that a majority voted for the bill is not conclusive that three-fifths were not present, and the fact may be shown by the journals. In the case at bar the journals of the Senate and Assembly show that this bill was duly passed by more than a majority vote, and in the presence of more than three-fifths of all the members elected to each house. I am, therefore, of opinion that the statute was duly enacted, and is valid.

It follows that the order should be affirmed, with $10 costs and disbursements. All concur.