In the Matter of JEROME T. ORANS, Respondent. NELSON A. ROCKEFELLER, as Governor of the State of New York, et al., Appellants; ANTHONY J. TRAVIA et al., Intervenors-Respondents.

In the Matter of the VILLAGE INDEPENDENT DEMOCRATS et al., Respondents. NELSON A. ROCKEFELLER, as Governor of the State of New York, et al., Appellants; ANTHONY J. TRAVIA et al., Intervenors-Respondents.

First Department, December 9, 1965.

218

*Donald Zimmerman* of counsel (*Daniel M. Cohen* and *George D. Zuckerman* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellants.

*Simon H. Rifkind* of counsel (*Edward N. Costikyan, Jay Greenfield* and *Mark II. Alcott* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison*, attorneys), for intervenors-respondents.

*Justin N. Feldman* of counsel (*Richard W. Hulbert, George M. Cohen* and *Jerome T. Orans*, in person, with him on the brief), for Jerome T. Orans, respondent.

McNALLY, J. This appeal is from an order permitting intervention of Travia and Zaretzki, respectively, Speaker of the Assembly and President Pro Tem of the Senate of the State of New York, and providing that, if on or before February 1, 1966, legislation shall not have been enacted providing for a plan to reapportion the Senate and Assembly in accord with the Fourteenth Amendment of the United States Constitution and the New York State Constitution, the court will take such steps with respect to the formulation of a reapportionment plan as provided for in said order.

The New York constitutional formulas for and the legislative apportionment thereunder were initially challenged in 1961. An action to vindicate rights under the Civil Rights Act (U. S. Code, tit. 42, §§ 1983, 1988) was dismissed as nonjusticiable. (*WMCA* v. *Simon*, 202 F. Supp. 741.) On appeal the dismissal was vacated and the action remanded to the District Court for determination on the merits (370 U. S. 190). On August 16, 1962 the District Court dismissed the complaint on the merits (208 F. Supp. 368). The second appeal to the United States Supreme Court was decided in June, 1964 (*sub nom. WMCA* v. *Lomenzo*, 377 U. S. 633). The Supreme Court then held the New York State Constitution formulas and legislative provisions for apportionment to be in violation of the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution and remanded the cause to the District Court to decide whether it was desirable to permit the 1964 election of legislators and afford them the opportunity to fashion a valid legislative appor-

tionment or to delay the election in furtherance of petitioners' voting rights.

On July 27, 1964 the District Court directed the election of Assemblymen and Senators on November 3, 1964 for a term expiring December 31, 1965 and required the Legislature to enact not later than April 1, 1965 an apportionment statute complying with the Fourteenth Amendment to be operative in November, 1965 for the term of one year ending December 31, 1966. Thereby were projected three annual elections in 1964, 1965 and 1966 as contrasted with the biennial elections provided for in the New York State Constitution (art. III, § 2). The said order was affirmed in February, 1965 (*sub nom. Hughes* v. *WMCA*, 379 U. S. 694).

On December 22 and 23, 1964, at a special session, the Legislature enacted the four plans of reapportionment set forth in chapters 976, 977, 978, 979 and 981 of the Laws of 1964.

This proceeding was commenced by order to show cause dated January 20, 1965 to review said reapportionment statutes in the light of the New York State Constitution. Shortly thereafter, by decree dated January 26, 1965, a three-Judge court of the United States District Court for the Southern District of New York decided that chapter 976 (Plan A) complied and that chapters 977, 978, 979 and 981 did not comply with the Fourteenth Amendment. (*WMCA* v. *Lomenzo*, 238 F. Supp. 916.) The District Court noted the pendency of this proceeding, that it did not raise claims under the Federal Constitution, and said, in part (pp. 921–922): " all the provisions of Article III of the State Constitution * * * are * * * operative. * * * Finally, there is presently pending a proceeding in the New York State courts, in which those attacking the validity of the Reapportionment Compliance Act can obtain an expeditious hearing on their claims under state law. N. Y. Const. Art. III, § 5. This is clearly an appropriate case for abstention by the federal courts."

In the light of the prior Federal holding that the reapportionment statutes, except Plan A, did not comply with the Fourteenth Amendment, by stipulation of the parties the issues of fact in this proceeding were limited to a consideration of Plan A (45 Misc 2d 616, 619). The order herein entered March 24, 1965, in part, declares Plan A violative of section 2 of article III of the New York State Constitution in that Plan A provides for 165 members of the Assembly whereas the Constitution limits the number to 150. The said order also provides: " 14. This Court retains jurisdiction of the above-captioned proceedings for the purpose of entertaining such applications

and conducting such further proceedings as any party may request or as may be appropriate in the light of further proceedings in these proceedings or in *WMCA, Inc.* v. *Lomenzo,* including (but without limitation) applications for injunctive or other relief as may be appropriate to give effect to this judgment or as justice may require.''

Special Term also found prima facie evidence of the violation of the constitutional mandate that Assembly Districts be '' of convenient and contiguous territory in as compact form as practicable '' (N. Y. Const., art. III, § 5), and that a hearing of the factual issues thereon would have been necessary were it not for the invalidity of Plan A as a matter of law. Following the holding of Special Term, the District Court extended to May 5, 1965 the time of the Legislature to enact a valid apportionment.

On May 24, 1965 the District Court ordered a general election on November 2, 1965 on the basis of Plan A with certain clerical corrections. The District Court then said, in part: '' Accordingly, we have ordered that a legislative election be held under Plan A on November 2, 1965, members so elected to hold office for terms of one year. Because Plan A violates the New York State Constitution, however, we make no order beyond this one. Therefore, we expect the parties to this suit to present to us reasoned proposals by which the citizens of New York State may obtain permanent legislative apportionment which complies with both the Federal and the State Constitutions. We retain jurisdiction to entertain such proposals.''

On direct appeal to the Court of Appeals because the only questions presented concerned the constitutional validity of the statutes (N. Y. Const., art. VI, § 3, subd. b, par. [2]), the order of Special Term herein entered March 24, 1965 was affirmed (15 N Y 2d 339). The Court of Appeals noticed the issues of fact as to '' the use of the gerrymander '' and also found it unnecessary to comment thereon because Plan A was invalid as a matter of law. Thereafter the Secretary of State of the State of New York was enjoined by order of the Supreme Court of the State of New York, Albany County, from proceeding with an election of members of the Legislature at the general election to be held November 2, 1965. The said order was modified by the Appellate Division, Third Department, in *Glinski* v. *Lomenzo* (24 A D 2d 655) and reinstated by the Court of Appeals (16 N Y 2d 27).

*Glinski* held that Plan A violated the State Constitution and the restraint of the proposed election based thereon was proper in the absence of a final order of the United States District

Court directing the election. *Glinski* was decided July 9, 1965. On July 13, 1965 the United States District Court made its further order expressly declaring the direction for a general election on November 2, 1965 on the basis of Plan A to be final and binding.

The order of the United States District Court made July 13, 1965 was unanimously affirmed by the Supreme Court of the United States. (*WMCA* v. *Lomenzo*, No. 85, decided Oct. 11, 1965.) The Supreme Court on the same day decided the appeal in *Matter of Orans* (*supra*) in a *Per Curiam* memorandum which, in part, held: "Insofar as the decision of the Court of Appeals has been superseded by the order of the District Court, the appeal is dismissed. In all other respects, the appeal is dismissed for want of a substantial federal question" (rehearing denied Nov. 22, 1965). Mr. Justice HARLAN wrote a concurring opinion applicable to both cases.

We agree with the reasoning of the concurring opinion of Mr. Justice HARLAN and conclude, as he did, that Plan A is but a temporary measure; the Federal courts have abstained from passing on the validity of the plan under the New York State Constitution and the determination of *Matter of Orans* (*supra*) by the Court of Appeals fails to present any substantial Federal question. In sum, the orders of the United States District Court serve only to suspend until the end of 1966 the New York constitutional limitation of the membership of the Assembly to 150. (N. Y. Const., art. III, § 2.)

The order herein entered March 24, 1965 and affirmed by the Court of Appeals (15 N Y 2d 339) provides in paragraph 14 thereof for the retention of jurisdiction in the broadest terms. Within its ambit is any application "appropriate in the light of further proceedings in these proceedings or in *WMCA, Inc.* v. *Lomenzo*, including (but without limitation) applications for injunctive or other relief as may be appropriate to give effect to this judgment or as justice may require." Appellants seek to limit the said reservation of jurisdiction to the trial of the factual issues relative to convenience, contiguity and compactness in respect of Assembly Districts mandated by the New York State Constitution (art. III, § 3). This contention ignores completely the part of the reservation of jurisdiction related to proceedings in the District Court in *WMCA* v. *Lomenzo*. In the final analysis, appellants challenge the said reservation of jurisdiction as beyond the power of the court.

We may not at this time entertain the issue of the jurisdiction exercised by Special Term in the light of the affirmance of said order by the Court of Appeals. It is to be noted, how-

ever, that the weight of authority is that judicial review of legislative apportionment includes the power to retain jurisdiction pending corrective legislative action. (*People ex rel. Engle* v. *Kerner,* 32 Ill. 2d 212, approved in *Scott* v. *Germano,* 381 U. S. 407; *Jackman* v. *Bodine,* 43 N. J. 453; *Asbury Park Press* v. *Woolley,* 33 N. J. 1; *Davis* v. *McCarty,* 388 P. 2d 480 [Okla.]; *Butcher* v. *Bloom,* 415 Pa. 438; *State ex rel. Reynolds* v. *Zimmerman,* 22 Wis. 2d 544.)

We fail to discern a potential confrontation of power among co-ordinate elements of the government of the State of New York. It is undeniable that the Supremacy Clause of the United States Constitution is operating to compel conformity with the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution and towards that end the New York constitutional formulas for apportionment have been held to be in violation thereof. (*WMCA* v. *Lomenzo,* 377 U. S. 633.) Under Federal mandate the 1965 and 1966 Legislatures have been elected in contravention of the New York State Constitution. The Federal court, concerned primarily with vindication of the Equal Protection Clause, nevertheless has afforded several opportunities for the submission of a legislative reapportionment comporting with the applicable Federal and New York constitutional provisions. Moreover, the Federal court has deferred to the New York courts and abstained from passing on New York constitutional reapportionment questions. The District Court nevertheless retains jurisdiction pending a permanent reapportionment satisfying New York and Federal constitutional requirements thereon.

In essence, New York State is presently enabled to exercise its sovereignty in respect of reapportionment because of Federal restraint in the application of the Supremacy Clause. The Federal policy is set forth in *Scott* v. *Germano* (381 U. S. 407, 409) : " We believe that the District Court should have stayed its hand. The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged. *Maryland Committee* v. *Tawes,* 377 U. S. 656, 676 (1964); *Scranton* v. *Drew,* 379 U. S. 40 (1964), citing *Butcher* v. *Bloom,* 415 Pa. 438, 203 A. 2d 556 (1964); *Jackman* v. *Bodine,* 43 N. J. 453, 473, 205 A. 2d 713, 724 (1964). See also *Kidd* v. *McCanless,* 200 Tenn. 273, 292 S. W. 2d 40 (1956), and discussion thereof in *Baker* v. *Carr,* 369 U. S. 186, 235–236 (1962). * * * The case is remanded with directions that the District Court enter an order fixing a reasonable time within which the appropriate

agencies of the State of Illinois, including its Supreme Court, may validly redistrict the Illinois State Senate; provided that the same be accomplished within ample time to permit such plan to be utilized in the 1966 election of the members of the State Senate, in accordance with the provisions of the Illinois election laws. * * * The District Court shall retain jurisdiction of the case and in the event a valid reapportionment plan for the State Senate is not timely adopted it may enter such orders as it deems appropriate ".

It should be clear that where, as here, the State constitutional formulas and the legislative apportionment based thereon fail to comply with the Fourteenth Amendment to the Federal Constitution there is concurrent Federal and State jurisdiction under Federal aegis to effectuate compliance not only with the Fourteenth Amendment but, in addition, the State constitutional provisions which do not impinge on the Equal Protection Clause of the Fourteenth Amendment.

" The duty to comply with the equal protection clause rests upon the three branches of State Government and upon the people of the State as well. The question is what part must be played by each." (*Jackman* v. *Bodine*, 43 N. J. 453, 473.)

There is no doubt that it is the primary obligation of the Legislature to apportion. (*Matter of Orans, supra*, p. 352.) Manifestly, its failure to respond to its obligation will not preclude reapportionment. It is also the primary obligation of the judiciary to review a legislative apportionment. (N. Y. Const., art. III, § 5.) We may not and do not assume that the 1966 Legislature, although numerically in excess of the constitutional limitation (art. III, § 2) will not discharge its obligation to reapportion in compliance with the final order of the District Court. Nevertheless, the reapportionment must be enacted on or before February 1, 1966, if it is to be reviewed in the light of the applicable provisions of the New York State Constitution. Appellants do not and on this record cannot resist the conclusion of Special Term that legislative and judicial action towards the end of a valid reapportionment in accord with the Federal and New York State Constitutions is not feasible for elections to be held in 1966 unless a legislative reapportionment is initially made on or before February 1, 1966.

The constitutional obligations of the Legislature and the judiciary in respect of reapportionment are equal and coextensive. That legislative failure to timely apportion may give rise to a Federal reapportionment is abundantly clear on this record. Time is of the essence. " Legislative reapportionment is primarily a matter for legislative consideration and determi-

nation, and * * * judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion ''. (*Reynolds* v. *Sims,* 377 U. S. 533, 586.) The fact that reapportionment may be primarily a legislative function does not mean that the courts, in circumstances such as these, must stand by helplessly when such function is not discharged. The judiciary as well as the Legislature of this State is under the duty to preserve its constitutional government. '' The courts of this State and especially our court are part of the government of the State and we have our own obligation to do what we can to keep in existence the necessary elements of State government.'' (*Matter of Orans, supra,* p. 353.)

The People of the State of New York are entitled to have a Legislature elected in accordance with both Federal and State constitutional standards. If the State Legislature fails to take action to achieve such result, must the unconstitutional method of apportionment be continued indefinitely or until a Federal court formulates a new plan? We think not. In such case our State courts would be derelict in the performance of their duties were they not to intervene — when requested to do so — and take steps to insure that the People of this State have constitutionally valid representation. To take action in such circumstances does not constitute a usurpation of the legislative function. It is merely the taking of such action to fill a vacuum in an area where none may be permitted to exist.

We do not consider the language of the order which provides that the respondents '' shall submit such a plan '' as a direction to the Legislature. Considered in its entirety, the order appealed from merely states that if such action is not taken, the court will take the necessary steps looking toward the formulation of such a plan, thus making provision for filling the vacuum which would then exist. Thus, it does not violate the spirit of the doctrine of separation of powers. For the legislative reapportionment to be effective, it must be timely. No less can be said in the circumstances. There is no arrogation of political power by the judiciary; on the contrary, the Legislature has been and is being afforded every opportunity to exercise its primary obligation to reapportion with the caveat that if it fails to do so timely, the court will then fashion reapportionment to comply with constitutional requirements — State and Federal.

The order should be affirmed, without costs.

BREITEL, J. P. (dissenting). The order granting the motion to intervene and purporting indirectly to hold the State Legis-

lature *in terrorem* unless it propound a valid reapportionment plan by February 1, 1966 should be reversed and the motion denied. The order constitutes an extraordinary and premature reach of power over the two other co-ordinate branches of government, the Legislative and the Executive, a distortion of a procedural remedy, and an unnecessary impulse toward a constitutional conflict and a potential confrontation of power among co-ordinate elements of State government.

Special Term granted a motion to intervene on behalf of the Speaker of the State Assembly and the Temporary President of the State Senate, whose terms as such expire December 31, 1965, a new Legislature having been elected recently to take office in January, 1966. The order also makes directions for the 1966 election of the Legislature and in preparation for it directs respondents to the motion to " submit " to Special Term, not later than February 1, 1966, a reapportionment plan or plans valid under the State and Federal Constitutions. The court also directed that the plan should govern primary contests for candidacies for the 1967–1968 Legislature, the nomination of delegates to any future State Constitutional Convention, and any special elections to be held prior to 1969. Having thus disposed of these basic issues, the court, in its order, reserved to itself, in the event respondents to the motion did not proceed with reasonable diligence " so as to permit completion of a valid plan by February 1, 1966 " the power to itself formulate such a plan and in aid of its efforts to appoint an appropriate number of Referees or jury of experts to assist. The court also reserved the power, evidently without requiring that there be a challenge to any plan, to designate such Referees or experts to assist the court in passing on any plan or plans that might be submitted.

Respondents to the motion are the Governor, the Lieutenant Governor, and the Attorney-General, and the movants are the two majority leaders of the outgoing Legislature, the present Speaker of the Assembly, and the President Pro Tem of the Senate. Respondents to the motion, as such, do not have the power to make or adopt any reapportionment plan. That power, which must be exercised by law, i.e., by the enactment in form of statute, resides with the Legislature and the Governor concurring (N. Y. Const., art. III, § 4; art. IV, § 7; *Matter of Koenig* v. *Flynn,* 234 App. Div. 139, affd. 258 N. Y. 292). Nevertheless, it is clear, whether proper parties were before it or not, that Special Term intended to address its order to those with the power to adopt (albeit the order speaks only of " submitting ") a reapportionment plan for the State.

The proceeding in which the order was entered was one originally brought to review four reapportionment plans enacted by the Legislature and Governor. Such a proceeding was a proper one with proper parties as designated and authorized by chapter 773 of the Laws of 1911. Its object was to declare the plans invalid and enjoin the appropriate State officials from acting under them. The object was initially fulfilled, the plan (Plan A) surviving earlier Federal court action was declared invalid and its use enjoined (*Matter of Orans,* 15 N Y 2d 339, affg. 45 Misc 2d 616, per LEVY, MATTHEW M., J.). However, the Federal courts subsequently qualifiedly overruled the State courts and directed the use of the stricken plan for the purposes of the 1965 election just passed.

Preliminarily, it should be observed what cannot be gainsaid, namely, that the State of New York is now under a Federal judicial mandate to reapportion its Legislature under applicable rules laid down by the Supreme Court of the United States under the Fourteenth Amendment. Under the Supremacy Clause (U. S. Const., art. VI) that mandate is not only primary, indisputable, and irresistible, but is as binding on State Judges as on Federal officials. Nevertheless, this State's highest court, the Federal District Court, and the Supreme Court have walked a narrow, delicate path between the requirements of the State and Federal Constitutions in order to preserve untouched the mandates of the State Constitution, or so much of them as do not compel a violation of the Federal Constitution, reserving to the State courts the interpretation of the State Constitution (*Matter of Orans,* 15 N Y 2d 339, 346–347, *supra; Reynolds* v. *Sims,* 377 U. S. 533, 581 n. 63, 584; *WMCA* v. *Lomenzo,* 238 F. Supp. 916, 921–922, 927, *supra*).

The preservation of this delicate line has made for the difficulties and the power confrontations between the State and Federal courts this past Summer (*Glinski* v. *Lomenzo,* 16 N Y 2d 27; *WMCA* v. *Lomenzo,* 246 F. Supp. 953, affd. 282 U. S. 4). But not until the recent order in this case has there been injected in this State, apart from the questions of prematurity and the distortion of a procedural remedy, a conflict and power confrontation among the elements of the State government. And this time there is no Supremacy Clause to resolve the confrontation.

The Federal courts and our highest court have made it patent that the political power to reapportion, as distinct from the judicial power to review, belongs to the Legislature, and that only in default of that power being exercised will the Federal courts intervene (*Reynolds* v. *Sims,* 377 U. S. 533, 586, *supra;*

*Matter of Orans,* 15 N Y 2d 339, 352, *supra*). Thus far, our highest State court has not yet declared that it has the power or would exercise the power to intervene and do what the Legislature has or may fail to do, albeit the occasion was critical and disturbing enough this past Summer. This may yet happen, as it has in other States; and then perhaps on the theory that the Federal Constitution, as interpreted by the Federal courts, and applying the Supremacy Clause, confers such power on the State courts (see *Scott* v. *Germano,* 381 U. S. 407, 409; *Maryland Committee* v. *Tawes,* 377 U. S. 656, 676; and, e.g., *Butcher* v. *Bloom,* 415 Pa. 438; *Jackman* v. *Bodine,* 43 N. J. 453, 473;* cf. *Seaman* v. *Fedourich,* 16 N Y 2d 94, 102, involving, however, only a declaration of invalidity, i.e., review, of local districting, and not the judicial imposition of a judicially designed districting plan).

To be sure, the State Constitution has now long contained a provision giving the State Supreme Court the power to review an apportionment made by the Legislature (art. III, § 5, last par.; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 195–198). In this respect, the State courts were never inhibited by the self-imposed " political " bar in reviewing legislative apportionments, which was not removed from the Federal courts until the decision in *Baker* v. *Carr* (369 U. S. 186). On the other hand, the New York State Constitution does not confer the power to reapportion on the State courts as distinct from the power to review. The judicial power to review may, of course, not be confused with the political power to adopt an apportionment or districting plan. The statute (L. 1911, ch. 773), implementing the constitutional power to review, obviously, cannot grant to the State Supreme Court any greater power than is conferred by the State Constitution. It does not, in any event. The statutory provision empowering the court to grant " such other relief as may be proper " (§ 3), by every rational mode of interpretation, connotes only ancillary implementation of the judicial power to review conferred in chief.

In *Matter of Orans* (15 N Y 2d 339, *supra,* this case in its earlier phase) the State Court of Appeals in each of the several

---

* New Jersey's Chief Justice WEINTRAUB, although assuming the existence in the court of the power to apportion, aptly stated (*Jackman* v. *Bodine, supra,* p. 473): " We think it clear that the judiciary should not itself devise a plan except as a last resort. The reasons, simply stated, are that the prescription of a plan of apportionment is laden with political controversy from which the judiciary cannot be too distant, and further, that if the judiciary should devise an interim plan, that plan will likely seem so attractive to some as to impede the search for common agreement."

opinions in that court, carefully abstained from suggesting that the court had the power or would intrude on the legislative power to reapportion. True, reference was made to the Federal courts so acting, and then only "as a last resort" or "out of necessity" (p. 352). The court, however, confined itself to asserting its power of judicial review over the pending reapportionment plan under the State Constitution, to the provisions of which it extended meticulous respect, and limited its order to implementing that judicial power. Even the Supreme Court so viewed the exercises of jurisdiction in the past by the State Court of Appeals. Thus, in *WMCA* v. *Lomenzo* (377 U. S. 633, 653) the court footnoted: "Decisions by the New York Court of Appeals indicate that state courts will do no more than determine whether the New York Legislature has properly complied with the state constitutional provisions relating to legislative apportionment in enacting implementing statutory provisions. See, *e.g.*, *In re Sherrill*, 188 N. Y. 185, 81 N. E. 124 (1907); *In re Dowling*, 219 N. Y. 44, 113 N. E. 545 (1916); and *In re Fay*, 291 N. Y. 198, 52 N. E. 2d 97 (1943)."

Under the circumstances, the arrogation by Special Term, of the political power to apportion, albeit conditionally and by means of an *in terrorem* mechanism, was imprudent and an abuse of discretion. It was unwarranted by any provision of the State Constitution, or in lieu thereof, by any authoritative applicable judicial precedent reading that power into the State Constitution, or by any Federal judicial precedent requiring a State court to exercise such a power by virtue of the Supremacy Clause and to ignore its State Constitution. So it appears, unless by some logical or political legerdemain unconstitutional exercises of judicial power are less invalid than unconstitutional legislative apportionments.

Beyond this fundamental hurdle to State court action, especially lower court action, the order was premature. The Legislature to which it was addressed had not yet been elected and still has not taken office. Moreover, it is a Legislature elected on a reapportionment satisfying Federal constitutional standards, a critical difference for this purpose, when it is compared with a Legislature, many of whose members faced political extinction from any major reapportionment. There is no continuity between separately elected State Legislatures (*Matter of Stickney*, 110 App. Div. 294, 298–299, affd. 185 N. Y. 107). Consequently, the new Legislature was not represented in the proceeding. So, too, there was and could hardly be any showing that the new Legislature would not do what it was obliged to do by the decree of the Federal court, now that the judicial

determinations of the past Summer have made it clear that the problem was obviously in its last crisis, if judicial reapportionment by the State or the Federal courts were to be avoided.

The effect of the Governor being a party to the proceeding raises additional difficulties because the writ of the court does not run to the chief executive (*People ex rel. Broderick* v. *Morton,* 156 N. Y. 136; *Gaynor* v. *Rockefeller,* 21 A D 2d 92, 98, affd. 15 N Y 2d 120).

Lastly, the procedural deformity utilized by movants to base the order is self-elevating bootstrapping at its worst. The proceeding in which the motion was made had been brought for an entirely different and proper purpose, namely, to review the questioned reapportionment plan adopted by the Legislature, under a procedure with proper parties provided by the State Constitution and the implementing review statute. That purpose had been fulfilled, and the power reserved by Special Term, at that time (per MATTHEW M. LEVY, J.), related to the ancillary implementation of that judicial review. By no stretch of even a fevered imagination could the proceeding or the statute under which it was brought be extended to comprise the political power to make a new apportionment or to threaten one. Certainly, Mr. Justice LEVY's elaborated opinion provides no suggestion of such an extraordinary presumption (*Matter of Orans,* 45 Misc 2d 616, *supra*).

Accordingly, I dissent and vote to reverse the order, on the law, and to deny the motion.

RABIN and STEVENS, JJ., concur with MCNALLY, J.; BREITEL, J. P., dissents in opinion in which EAGER J., concurs.

Order, entered on September 2, 1965, affirmed, without costs and without disbursements.