David T. Gibbons, J.
By this motion, the defendants, consisting of the Board of Supervisors of Nassau County, the clerk of said board, and the County Executive of Nassau County, request the court to approve the Local Laws of 1975, No. 3, of the County of Nassau, with one of the two apportioned plans submitted therein. This motion is made for the purpose of complying with a direction contained in the judgment of this court by Mr. Justice Geiler, made in pursuance of his decision dated October 10, 1968, in Franklin v Mandeville (57 Misc 2d 1072, affd 32 AD2d 549, mod 26 NY2d 65).
By way of cross motion, the plaintiffs move for an order disapproving the local law with either of the apportionment plans submitted, and various alternative items of relief are requested by them. Upon a motion by the Incorporated Village of East Hills, it was granted permission to appear and present argument and a brief as amicus curiae.
By virtue of an order of this court dated May 7, 1975, the League of Women Voters of Nassau County has been granted leave to intervene herein as a party plaintiff and has submitted herein an affidavit in opposition by Eleanor Berger, its president.
This action was commenced in March of 1968 for a declaratory judgment. On a motion for summary judgment, Mr. Justice Geiler on October 10, 1968, found that section 104 of the Nassau County Government Law (L 1936, ch 879, as amd) was unconstitutional and he directed that: "The defendants are hereby directed to submit a plan or plans for apportion *54 ment and representation on the Board consistent with the principle of 'one man, one vote’ within the next six months * * * The Board shall continue to operate in its present fashion until a new apportionment plan is put into operation.” (Franklin v Mandeville, 57 Misc 2d 1072, 1079, supra.) Justice Geiler also decreed that this court shall retain jurisdiction of this matter.
After affirmance by the Appellate Division, the Court of Appeals modified the judgment to the extent only of providing that the reapportionment plan should be adopted on the basis of the 1970 census (see Franklin v Mandeville, 26 NY2d 65, supra). The board of supervisors was, therefore, directed to adopt a valid reapportionment plan within six months after public announcement of the enumeration of the inhabitants of Nassau County in the Federal census of 1970.
Judge Gibson, in writing for the Court of Appeals, stated as follows: "The order appealed from should be modified so as to direct that a valid reapportionment plan be adopted by the Board of Supervisors within six months after public announcement of the enumeration of the inhabitants of Nassau County in the Federal census of 1970 and that meanwhile the present plan remain in effect as a temporary measure, and, as so modified, the order should be affirmed.” (26 NY2d 65, 70, supra.)
In furtherance of this direction, though not within the time period mandated by the Court of Appeals, the board of supervisors adopted a new apportionment plan in September of 1972. That plan provided for retention of the present structure of the board of supervisors utilizing a weighted vote system but redistributing the vote to a certain extent. Upon submission to this court, the plan was disapproved as unconstitutional. (See Franklin v Krause, 72 Misc 2d 104.) An appeal was taken directly to the Court of Appeals on constitutional grounds, the judgment of this court was reversed and the plan for reapportionment of the board of supervisors was approved. (See Franklin v Krause, 32 NY2d 234, app dsmd 415 US 904.) Under the provisions of section 155 of the Nassau County Government Law (L 1936, ch 879, as amd; see Local Laws, 1965, No. 12 of County of Nassau). However, a local law which changes the voting power of an elective officer is subject to a mandatory referendum. The referendum was held at the last general election in November of 1974 and the reapportionment plan was defeated by the voters. On April 9, 1975, *55 the board of supervisors adopted the Local Laws of 1975, No. 3, of the County of Nassau. It was signed by the County Executive on the following day. If approved by the voters, it would amend the various sections of the Nassau County Government Law. The principal change to be effected would be that the board of supervisors would be superseded as the governing body of the county by a 15-member county legislature, each member being elected from an individual district and, of course, having one vote. The proposed local law has annexed to it two plans for the division of the county into 15 legislative districts, designated therein as “Plan A” and “Plan B”. Section 7 provides for the submission of the local law, including Plan A and Plan B, to this court for its approval in accordance with the judgment heretofore referred to. It is stated that the local law will be submitted to the voters at a special election to be held on June 10, 1975 with the legislative districts described in Plan A if approved by this court, and if not, with the districts described in Plan B if that be approved by this court.
It should be made clear that the jurisdiction reserved to the court in this case extends only to a consideration of the constitutionality of any plan for apportionment and representation adopted by the board of supervisors. On the cross motion, plaintiffs, among other things, ask that the court alter the term of office and compensation provided in the local law for county legislators. Since there is no constitutional question involved with respect to those matters, this court may not assume the function of the legislative body. Moreover, even in the field of apportionment, the jurisdiction of the court is limited. The Supreme Court of the United States has said: "We have repeatedly recognized that state reapportionment is the task of local legislatures or of those organs of state government selected to perform it.” (Gaffney v Cummings, 412 US 735, 751.)
Where a plan of apportionment is enacted by the legislative body, it is not for the court to say that a better plan could have been prepared. “Our duty is, rather, to determine whether the legislative plan substantially complies with the Federal and State Constitutions.” (Matter of Schneider v Rockefeller, 31 NY2d 420, 427.) Therefore unless it be found that Plan A and Plan B are violative of some constitutional principle, the court may not grant any of the alternative items of relief requested by plaintiffs. We are mindful of the *56 action taken by the court in Town of Greenburgh v Board of Supervisors of Westchester County (59 Misc 2d 152; affd 32 AD2d 892; affd 25 NY2d 817). That case is a unique one and is distinguishable. Nevertheless, it should be noted that the court there did not have before it an acceptable plan which had been adopted by the legislative body.
The primary consideration in dealing with the constitutionality of legislative apportionment is equality of population. The equal protection clause of the Constitution of the United States is violated unless there is substantially equal legislative representation for all citizens. (Reynolds v Sims, 377 US 533, 568.) An apportionment plan in which each district has the same population would be the ideal under the one man, one vote concept. Thus, if the population of this county were divided by 15, the ideal population for each legislative district would be arrived at. It has been recognized, however, that the ideal is generally not obtainable. The question then is whether substantial equality exists. The most common method of determining that question is to find the two districts which vary the greatest in population from each other, i.e., the most populated and the least populated district. The variation between the two expressed by a percentage has been used as a guide. Since there is no dispute between the parties, this court must assume that the figures presented here as to the ideal population of the districts and the variations in each of the plans are correct and will base its decision upon those figures.
Plan A contains one district which would be under represented by approximately 11.5%, and one district having a population of 10.7% less than the ideal which would be over represented by approximately 10.7%. The variation, therefore, is in excess of 22%. Defendants seek to justify this variation on the ground that the plan would avoid splitting the communities of Roslyn and the Five Towns. It has been held that the maintenance of the integrity of political subdivision lines is a legitimate justification for a disparity in population among districts. (Mahan v Howell, 410 US 315, 330.) However, it is noted that in the cited case the total variation was 16.4%. It is the view of this court that a 22% variation exceeds the allowable limits. Plan A violates constitutional standards and therefore is unacceptable.
Passing to Plan B, we find that the total population variation is approximately 8.6%. In White v Regester (412 US 755) the Supreme Court of the United States has held that a total *57 population variation between legislative districts of less than 10% need not be justified by any other considerations. Clearly then, Plan B comes within the prevailing concept of substantial equality in population.
Plaintiffs have attacked this plan basically upon two grounds. First they argue that the plan divides communities, and secondly that it does not provide fair political representation. The general answer to both of these arguments is that, in the context in which represented, neither argument reaches constitutional dimensions which, as previously outlined herein, are the jurisdictional limits of this court.
The court knows of no case nor has counsel furnished it with any legal precedent where an otherwise constitutional apportionment plan has been set aside because local community lines were divided thereby, or because it failed to provide effective political proportional representation. A more specific answer is available to the argument that communities are divided by the plan. While it may be that certain unincorporated "communities” are divided, there has been a deliberate effort to preserve the integrity of the more «identifiable units, the incorporated villages, which are true political subdivisions. This court has concluded that Plan B meets the constitutional criteria and is an acceptable apportionment plan.
One further point should be mentioned. As pointed out by the Court of Appeals in Franklin v Mandeville (26 NY2d 65, 69, supra), section 104 of the Nassau County Government Law (L 1936, ch 879, as amd) "clearly violates the one man, one vote principle”. Three attempts at reapportionment since 1965 have failed. The fourth attempt is to be made on June 10, 1975, with the submission to the voters of the Local Laws of 1975, No. 3, of the County of Nassau, as approved by this court. Plaintiffs have argued that members of the board of supervisors have, in the past, deliberately set about to defeat prior apportionment plans in order to maintain the present unconstitutional system. It has also been argued that provisions have been inserted into the present plan for the express purpose of making it unpopular in order to insure its rejection by the voters.
Notwithstanding efforts at reapportionment on the part of the defendants, the court must at this time, take into consideration that when the Court of Appeals considered Mr. Justice Geiler’s determination in January, 1970, it stated that (26 NY2d 65, 70, supra): "the order appealed from should be *58 modified so as to direct that a valid reapportionment plan be adopted by the Board of Supervisors within six months after public announcement of the enumeration of the inhabitants of Nassau County in the Federal census of 1970 and that meanwhile the present plan remain in effect as a temporary measure(Emphasis added.)
To say that the operation of the government of Nassau County since January 1970 under a concededly unconstitutional form of government for a period of upwards of five years involves a "temporary measure” is to do violence to the meaning of such language.
Inherent in the decision of the Court of Appeals is a mandate for prompt action on the part of the defendants, as those charged with the duty to provide a legal legislative plan for the county.
Although the court assumes that a good faith effort to present an acceptable constitutional alternative to the present unconstitutional governmental structure of this county has been made by the board of supervisors, it will not be for the best interests of the people of this county to continue to exist indefinitely under the present unconstitutional form of county government, and for that reason, although there has been no showing of a persistent failure or refusal to come up with a valid plan up until the present time, the court will continue to exercise jurisdiction of this matter, and in the event the electorate of Nassau County shall reject the plan presented in a referendum it will, following such rejection, entertain an application for the establishment by the court of an interim form of constitutional government which shall continue until such time as the electorate of Nassau County shall by referendum adopt a new plan submitted by the defendant board of supervisors.
Accordingly, the defendants’ motion is granted to the extent that the Local Laws of 1975, No. 3, of the County of Nassau, with the legislative districts described in Plan B are approved for submission to the electors of the county.
The plaintiffs’ cross motion is denied in all respects.
The defendants’ motion to amend the title of this action is granted to the extent that the caption is hereby amended to read as set forth in a separate order made this day.