Joseph Life, J.
The parties to this litigation agree in that their common objective is that Nassau County shall have a constitutional form of government. Unanimity ceases and paths diverge in the choice of what form the legislative body shall take.
It should be helpful to review the progress of this litigation since it first came under judicial scrutiny and to aid in that purpose we have included dates of decisions.
In a decision rendered October 10, 1968, Mr. Justice Geiler ruled that the then legislative body, the existing Board of Supervisors in Nassau County, was unconstitutional; that section 104 of the County Charter was invalid in its entirety; that the Legislature which had been operating was not truly representative because certain citizens had an inferior voting status; and he directed the defense in the action (within six months after service of a copy of the judgment), to submit a plan which would be consistent with the principle of one vote for each man. The judgment (Nov. 15, 1968) determined that the court would retain jurisdiction (Franklin v Mandeville, 57 Misc 2d 1072 [Oct., 1968], affd 32 AD2d 549 [April, 1969], mod 26 NY2d 65 [Jan. 14, 1970]). The Court of Appeals in affirming modified Mr. Justice Geiler's order to the extent of directing that the plan should be submitted within six months after the results of the 1970 Federal census had been made known and the court provided (p 70) that the then existing plan should continue in effect as a temporary measure.
The litigation since has followed a tortuous path and the issues remain unresolved.
*44 In September 1972 the board adopted a weighted voting plan (Local Law, 1972, No. 13 of Nassau County) which was promptly attacked as being unconstitutional. Mr. Justice Pittoni agreeing, resisted the arguments to appoint a nonpartisan commission to prepare a valid plan. Relying on the board’s undertaking as expressed in a resolution of September 25, 1972 that it would propose a new plan within 60 days should the court’s determination be adverse, he turned the matter back to the board to prepare a plan not employing the weighted voting concept (Franklin v Krause, 72 Misc 2d 104 [Nov. 16, 1972]).
An appeal from that decision was taken directly to the Court of Appeals. That court reversed and held that the plan was constitutional (Franklin v Krause, 32 NY2d 234 [May 3, 1973], app dsmd for lack of a substantial Federal question 415 US 904 [Feb., 1974]). May we suggest that the Court of Appeals entertained reservations about the weighted voting plan. In spite of its conclusion, the court stated that it was not prepared to reject a plan which had been approved unanimously by the bipartisan board nor was the court inclined to force the county into multimember districting with a large legislative body (p 238). In concluding (p 242) they said: "In no way are we suggesting that the one man, one vote principle be abandoned at the local level. We will continue to insist that this ideal be the goal and that Iannucci be the guide. We merely conclude that the plan before us meets a sufficient standard when measured against the law as it now is with regard to local government”. (The reference to Iannucci is to Iannucci v Board of Supervisors of County of Washington, 20 NY2d 244.)
In November, 1974 the weighted voting plan was submitted to the electorate. The voters rejected it although many fewer voted on the referendum than made a choice between gubernatorial candidates.
In April of this year the Board of Supervisors adopted Local Law No. 3-1975 which provided that the county would be divided into 15 districts of nearly equal population from each of which a legislator would have been elected.
The Board of Supervisors then made an application to the court for approval of the new local law. The court was given a choice from two suggested plans described as "A” and "B”.
An order of this court permitted the League of Women Voters of Nassau County to intervene. Plans were recom *45 mended by parties to this litigation other than the Board of Supervisors.
However, Mr. Justice Gibbons recognized that it was not for the court to pre-empt legislative prerogatives. Therefore, he expressed a preference for one which had been proposed by the board and directed that it be submitted to the voters for their consideration on June 10, 1975 (Franklin v Krause, 81 Misc 2d 52). Only a little more than 9% of the citizens eligible to vote took the opportunity to express their views and this plan was rejected by a plurality of somewhat more than 5,000.
When so small a number of the total eligible votes is cast, it is hardly an expression of popular opinion. Furthermore it would be fruitless to speculate on why they voted as they did and why more failed to vote.
Mr. Justice Gibbons in his opinion (Franklin v Krause, 81 Misc 2d 52, 58) said that the court would retain jurisdiction and that in the event the plan which he approved for submission were rejected by the electorate at the June 10, 1975 referendum, then the court would "entertain an application for the establishment by the court of an interim form of constitutional government which shall continue until such time as the electorate of Nassau County shall by referendum adopt a new plan submitted by the defendant board of supervisors”.
Thus the plaintiffs returned to ask that the court devise and impose an interim plan for constitutional government of the county and they offered two multidistrict plans which they had placed before Judge Gibbons. They are not adverse to a judicial commission which would devise a plan. The Board of Supervisors cross-moved and asked that the interim plan be on the basis of modified weighted voting in accordance with Local Law No. 13-1972.
The Board of Supervisors, discarding the multidistrict plans which it had approved and offered to Judge Gibbons, makes a strong argument for weighted voting. They point out that if the court were to approve it, the present Board of Supervisors would continue in operation with the least disruption in government and less cost to the taxpayers.
The County Executive, the Honorable Ralph G. Caso, a defendant in the action, supports a representative form of government composed of seven legislators elected from districts of equal population and he recalls that he vetoed the weighted voting scheme. The League of Women Voters, the *46 opinions of which are respected, urges the court to impose a . County Legislature of 15 districts though they suggest as an alternative the creation of a judicial commission with limited purposes.
The weighted voting and the multidistrict plans have both been disapproved by the voters. Here, we would echo the remarks of Mr. Justice Dillon when he said in Town of Greenburgh v Board of Supervisors (59 Misc 2d 152, 155, affd 32 AD2d 892, affd 25 NY2d 817) "the court is reluctant to order into effect a plan of apportionment which bears the handicap of popular disapproval”. The dilemma is increased when the voters have rejected not only one but both types.
As many courts have said the function of devising a plan for a legislative body is primarily a legislative matter (see the discussion in Matter of Orans, 47 Misc 2d 493, 499, affd 24 AD2d 217, mod 17 NY2d 601, mod 17 NY2d 107). However, the issue has for too long occupied the time and attention of the courts, the office holders, and citizens of the county.
Therefore, this court will not impose either of the plans which have already been rejected. It will appoint a judicial commission to devise a plan for a constitutional County Legislature. Its choice will be unlimited and it may select even one of those which has already been rejected or some modification thereof provided always that it meets the test of "one man, one vote”.
The composition of that commission will be described in the order which will be entered on this decision.
A group of five citizens have asked for leave to intervene as amicus curiae. The parties to this action are represented by able counsel and the issues have already been presented in careful detail; therefore, the request to participate is denied (3A CJS Amicus Curiae, § 1). Surely the commission will be pleased to hear their recommendations.
The commission will be requested to hold hearings and with all reasonable speed, to prepare and submit to the court for its consideration a complete and valid constitutional plan for the legislative body of the County of Nassau, which shall continue in effect until validly superseded (cf. Matter of Orans, 17 NY2d 107).