JACOB ELISHEWITZ & SONS CO., INC., Appellant, v. BARRY EQUITY CORP., Respondent.

First Department, June 26, 1952.

*Bernard Tomson* of counsel (*Norman Coplen* with him on the brief; *Bernstein, Weiss, Tomson, Hammer & Parter,* attorneys), for appellant.

*Stanley Bogart* of counsel (*Murray I. Sommer* with him on the brief; *Bogart & Lonergan,* attorneys), for respondent.

*Louis M. Meringolo,* attorney (*Reuben A. Lazarus* and *Saul Kaplan* with him on the brief), for New York State Temporary Commission to Study Rents and Rental Conditions, *amicus curiæ.*

BERGAN, J. Plaintiff is engaged in the manufacture of hats and requires live steam in this process. In a series of written leases terminating in 1947 it was agreed between the parties that defendant as landlord would furnish steam for plaintiff's use at a charge separate from the rent. Since the termination of the last lease in 1947 plaintiff has occupied the premises as a statutory tenant.

Before the amendment to the Commercial Rent Law by chapter 416 of the Laws of 1952, a failure by a landlord to furnish steam would have been regarded as a diminution of " services " as defined by that statute, but in 1952 the Legislature undertook to deal further with this subject.

It was provided by this amendment that " services " to be protected against diminution by a landlord " shall not include ", among other things, the sale of " live steam " for which a separate charge is made by the landlord (Commercial Rent Law, § 2, subd. [k]).

The amendment became law by the Governor's approval on April 3, 1952, and the next day defendant wrote a letter to plaintiff stating that " we shall no longer sell live steam to you ". This action is for a permanent injunction restraining the landlord from withholding live steam from the tenant and a motion was made for a temporary injunction which was denied at Special Term. The appeal is from that order. During the pendency of the motion at Special Term the defendant was enjoined by the court from withholding live steam and during the appeal this court has continued the effect of that restraint.

The appellant argues that the debates in the Legislature show clearly that it was not intended by the 1952 amendment to permit a landlord to eliminate steam or electricity as services except where derived from a public utility and as an incident of a change-over from submetering to direct metering in compliance with an order of the Public Service Commission.

The New York State Temporary Commission to Study Rents and Rental Conditions, joining in the argument of appellant here, supports the view that the legislative intent was not to permit the landlord to eliminate the live steam service under conditions shown in this action, where public utility supply is not available and where a suspension of the landlord's service would be disastrous.

It was, however, from the report of this commission that the troublesome statutory language had its genesis. The commission recommended to the 1952 Legislature that '' special separate services furnished to a tenant '' for which a charge is made by the landlord separate from the rent be excluded from the protected '' services '' and listed '' electricity, live steam and other similar items ''. It has been seen that there was almost a literal absorption of these words into the statute which in turn was given a literal effect at Special Term.

We are advised that live steam furnished by landlords without the alternate availability of such steam furnished by a public utility represents an important condition of the continuance of the existence of many industries in the city of New York. The linking together of the '' sale '' of electricity with '' live steam '' in the legislative words would suggest that the draftsmen of the statute had in mind a service for which there would be an available public utility substitute if the landlord discontinued the existing arrangement.

We think a question of this intricacy and importance should not be determined until all the pertinent facts are presented and full consideration can be given to the varying possible conditions and the indicated intention of the Legislature. The record on this motion for a temporary injunction is not sufficient for a definitive determination of the ultimate question in the case. That far-reaching decision should be made only after trial. In the meantime, the landlord cannot be substantially prejudiced by a temporary injunction and the tenant might be irreparably injured unless a temporary injunction is granted.

The order appealed from should be reversed, with $20 costs and disbursements to appellant, and the motion granted.

PECK, P. J., CALLAHAN, VAN VOORHIS and HEFFERNAN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to appellant, and the motion granted. Settle order on notice. [See *post,* p. 915.]