Morris E. Spector, J.
Motion for injunction pendente lite. Plaintiffs entered into an agreement with defendants whereby plaintiffs were to buy and defendant Fessia was to sell all of the outstanding stock of three bus companies which were engaged in inter- and intra-State transportation.
It was necessary to get approval from the New York Public Service Commission and the Interstate Commerce Commission. The consideration for said sale was $500,000. In the event no approval was obtained by a stated time, the deposit was to be returned and the contract cancelled. Originally this deal was to close on December 31, 1960 but was extended to December 31, 1961 in view of protracted hearings before the various commissions.
Paragraph 10 of the contract provides: ‘ ‘ The parties hereto agree that they will do no act to hinder or delay the procurement of approval by any regulatory body that is required to enable consummation of this Agreement. The parties further agree to cooperate fully, promptly and expeditiously in the execution, filing, presentation and prosecution of any appropriate application or applications for any consent or approval that may be required * * * to and before the Interstate Commerce Commission and the New York Public Service Commission * * * and in the execution and filing of any instruments or documents which the attorneys for the parties hereto deem necessary or required to enable consummation of this Agreement and the transfers provided for herein.”
The New York Public Service Commission has given its approval provided the transaction be consummated on or before November 7, 1961.
*129 The Interstate Commerce Commission held extended hearings over a period of nine months before an examiner, who in his report recommended disapproval of the application. The examiner’s report is indecisive. It is still required of the commission to approve or disapprove said report. Exceptions to said report were filed on July 31,1961.
However, defendant Fessia has undertaken unilaterally to cancel this contract and caused a letter to such effect to be sent to the Interstate Commerce Commission on August 7, 1961 although there is no provision authorizing termination of this agreement except upon condition that this transaction be not consummated by December 30, 1961. Defendant Fessia has caused another letter to be sent to the Interstate Commerce Commission on August 17,1961. The contents of said letter are not before the court. However, the reply thereto grants the defendant Fessia until September 11,1961 to reply to the exceptions on file. This in effect means that said commission will not even examine the file at least until said date. The defendants, by these tactics, have thus delayed the proceedings for a period of over 40 days.
The plaintiff desires to restrain the defendants from interfering with the orderly prosecution of the application claiming that they are failing “to cooperate fully, promptly and expeditiously ”.
This agreement is one in which specific performance may be ordered by the court. Thus the court is empowered to restrain the defendants from failing “ to cooperate fully, promptly and expeditiously ’ ’ in prosecution of the application for approval of the said commission. In Bomeisler v. Forster (154 N. Y. 229, 239) the court said: “ The rule of specific performance will be extended to personal contracts, where the party wants the thing in specie and he cannot otherwise be compensated. (Phillips v. Berger, 2 Barb. 608; Story’s Eq. Jur. § 716.) That is to say, the extension of the rule to such cases is justified, where there would not be a complete and satisfactory remedy by compensation in damages, or where the benefits of the contract would not inure fully to the party, in whose favor it was made, unless it was specifically performed. * * * It is not upon the principle that equitable relief is due to this plaintiff to protect him from oppressive or vexatious litigation, that we think that the decree of the trial court must rest for its correctness; but it is upon the principle that a specific performance of the defendant’s agreement with the plaintiff is essential, if he is to receive its benefits, and, if he was entitled to specific performance, then the remedy of an injunction, restraining the defendant from *130 doing the act which she has contracted not to do, was proper to be granted.” (Civ. Prac. Act, § 877; 1 High, Injunctions, §§ 5, 13.)
An injunction pendente lite should issue since it could do the defendants no real harm even if they should be successful in the action; while to refuse it probably would render valueless any judgment plaintiff may obtain. “ The plaintiff thus makes out a prima facie case in support of his claim, and although his averments are denied, we agree with the Special Term that it was proper to preserve the status quo until a hearing upon the merits. The injury which the plaintiff would sustain by a sale of the invention is much greater than the defendant can possibly sustain by a temporary restraint upon his right of disposition.” (Cornwall v. Sachs, 69 Hun 283, 285.)
In Elishewitz & Sons Co. v. Barry Equity Corp. (280 App. Div. 336 [1st Dept.]) the court said, per Bergan, J. (p. 338): “ We think a question of this intricacy and importance should not be determined until all the pertinent facts are presented and full consideration can be given to the varying possible conditions and the indicated intention of the Legislature. The record on this motion for a temporary injunction is not sufficient for a definitive determination of the ultimate question in the case. That far-reaching decision should be made only after trial. In the meantime, the landlord cannot be substantially prejudiced by a temporary injunction and the tenant might be irreparably injured unless a temporary injunction is granted” (italics supplied).
The plaintiffs seek more than a temporary injunction restraining the continuance of defendants’ breach of contract. They claim this relief is inadequate. Plaintiffs seek to compel defendants to undo the damage already done. Plaintiffs are desirous of accelerating the date when the commission shall start to consider the exceptions filed to the report of the examiner. Both parties engaged Washington counsel to prosecute this appeal. What right has defendant Fessia now to have other counsel interfere with said prosecution and cause the commission to extend the time for replies to the exception before considering this appeal? What right has the defendant to cause letters to be written to the commission, confounding it with extraneous matter? This is the antithesis of “ fully cooperating, promptly and expeditiously in the execution, filing, presentation and prosecution of any appropriate application or applications for any consent or approval that may be required ’ ’. It is their contractual obligation to aid in the prosecution of said appeal and not to hinder and delay same. It is clear that their ultimate *131 goal is to prevent the consummation of the agreement, which if not performed by December 30, 1961 will automatically vitiate same. It is apparent, then, that the court must exercise its discretion and authority to compel the undoing of those unlawful acts, where possible. The court, having authority to enjoin future acts, may also direct the undoing of past acts which produced injury and may render any judgment ineffectual. Therefore, the court may direct the defendant to withdraw from the commission its telegram of August 4 and its letters of August 7 and 17 and request the commission to consider said appeal at its earliest convenience. Time is of the essence.
Chief Judge Cullen held in Bachman v. Harrington (184 N. Y. 458, 463-464): “ While, however, the language of the Code in terms authorizes an injunction only against the commission of acts, still it is doubtless within the power of a court of equity in proper cases to issue mandatory injunctions, and the provisions of the Code should not be so strictly construed as to deny that power in any case * * * the nature and function of an interlocutory injunction are well stated by Judge Taet of the United States Circuit Court in Toledo, etc., R. Co. v. Pennsylvania Company (54 Fed. Rep. 730): ‘ The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits.’ To that doctrine I express my full assent. Therefore, where the complainant presents a case showing or tending to show that affirmative action by the defendant, of a temporary character, is necessary to preserve the status of the parties, then a mandatory injunction may be granted ” (italics supplied).
Accordingly, the motion for injunction pendente lite is granted to the following effect:
1. Defendants are restrained from failing to co-operate fully, promptly and expeditiously in prosecuting the application of approval before the Interstate Commerce Commission and causing any hindering or delay in the prosecution of same.
2. Defendants are commanded to withdraw from said commission and/or their consideration thereof their telegram of August 4,1961 together with their letters of August 7 and 17, forthwith.
3. Defendants are commanded to urge immediate and speedy consideration by said commission of the appeal pending.