William B. Lawless, J.
Plaintiffs apply for temporary relief pending trial of an action seeking to declare unconstitutional the present apportionment of members of the Erie County Board of Supervisors. Defendants have not yet answered the complaint which was served on December 28,1965.
Plaintiffs seek a temporary order:
I. providing that this court shall forthwith undertake a constitutionally valid apportionment of the Board of Supervisors of Erie County appointing such Special Referee or Referees to aid it as it deems necessary, to be completed on or before March 8, 1966, and to be made effective on and after March 15, 1966, unless the defendant Board of Supervisors shall have carried out a constitutionally acceptable apportionment on or before March 8,1966; and further,
II. enjoining mandatorily the defendant Board of Elections of Erie County to forthwith commence and inaugurate all procedures necessary and appropriate to bring on and make possible a special election on November 8, 1966 for the election of Supervisors in the County of Erie; and finally,
III. providing that this court shall retain jurisdiction of this action and entertain an application by any of the parties for a review of any apportionment plan that the defendant Board *461 of Supervisors may adopt, and for such other and further relief as shall be just and proper.
On the return of the motion, the Board of Supervisors of Erie County appeared and moved to dismiss the application for temporary relief, contending that Supreme Court has no jurisdiction to entertain what they characterized as a motion for summary judgment since the issues in this action have not been joined and the time to answer or otherwise plead has not as yet expired. The Board of Supervisors addressed themselves solely to the timeliness of the application. The court heard arguments on the board’s motion to dismiss plaintiff’s application, reserved decision thereon and immediately thereafter heard argument by plaintiffs on their request for temporary relief. Counsel for the board voluntarily withdrew and did not participate in the latter argument.
The City of Buffalo appeared and took the position that it does not oppose reapportionment so long as the City of Buffalo retains at least 50% representation in the Erie County Board of Supervisors.
Defendant Raymond P. Griffin appeared, took no position with respect to the motion of the Board of Supervisors, but, on the principal argument, contended that the incumbent Supervisors were elected for a two-year term and therefore any court order reducing said term would be improper and void.
I.
We agree with the Board of Supervisors that plaintiffs are not entitled to summary judgment prior to the joinder of issue herein. CPLR 3212 expressly states that such a motion may be brought only after issue has been joined. However, the motion before us is an application for temporary equitable relief and a preliminary mandatory injunction under CPLR 6301 which provides: A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an action in violation of the plaintiff’s rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff. A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the *462 defendant is restrained before the hearing can be had.” (Italics added.)
Although the title of the >CPLR mentions only a 1 £ preliminary injunction ” and ££ temporary restraining order ”, the text authorizes this court to issue an order where it appears that the defendant is doing or procuring or suffering to be done an act in violation of the plaintiff’s rights respecting the subject of the action, and £< tending to render the judgment ineffectual ”.
It is fundamental that an injunction may be used either to restrain or to compel the performance of an act. An injunction of the former type is called a prohibitory or negative injunction, whereas an order compelling performance is referred to as an affirmative or mandatory injunction. Historically, the prohibitory injuction was the earliest form of judicial restraint imposed upon parties. However, this should not obscure the fact that a court’s power to issue a mandatory injunction is well established and has a long history. (See Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6301.06; Rolls v. Miller [(1640, 15 Chas. I) Tothill’s Rep. 144]; Klein, Mandatory Injunctions, 12 Harv. L. Rev. 95, 103 [1898]; see, also, Note, Mandatory Injunctions as Substitutes for Writs of Mandamus in the Federal District Courts: A.Study in Procedural Manipulation, 38 Col. L. Rev. 903 [1938].)
Obviously, there are situations in which a mandatory injunction will be necessary to preserve the status quo or to prevent irreparable injury to the plaintiff. (Bachman v. Harrington, 184 N. Y. 458; Engelhardt v. Fessia, 31 Misc 2d 127; Veal v. Scheiner, 18 Misc 2d 962; Sterling v. Brahms, 10 Misc 2d 958; Mastantuono v. Scurachio, 82 N. Y. S. 2d 129, affd. without opn. 274 App. Div. 908 [2d Dept., 1948]. See, also, Peterfreund, Annual Survey of New York Law Civil Practice, 34 N. Y. U. L. Rev. 1563, 1583 [1959]; 1 Beach, Injunctions, §§ 97-104 [1895]; 4 Pomeroy, Equity Jurisprudence, §§ 1359-a [5th ed., 1941].)
As stated by the Federal court in Toledo Ann Arbor & North Mich. Ry. Co. v. Pennsylvania Co. (54 F. 730, 741 [C. A. N. D. Ohio, 1893]): “It sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from. In such a case, courts of equity issue mandatory writs before the case is heard on its merits.” (Italics added.)
In such circumstances as described above, “ there should be no hesitancy about granting a request for a mandatory preliminary injunction whenever a need for one is shown.” (7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6301.06, p. 63-14. *463 See, also, Mandatory Injunction Prior to Hearing of Case, Ann. 15 ALR 2d 213 [1951]; Interlocutory Mandatory Injunction Ann. 32 A. L. R. 894 [1924].)
While it is true that the preliminary order sought by the plaintiffs will provide the same temporary relief as the ultimate relief sought, this fact alone does not defeat the motion. Obviously, a court has no power to issue a permanent injunction in advance of trial. (Oppenheim v. Thanasoulis, 123 App. Div. 494 [1st Dept., 1908]). However, the issuance of a preliminary injunction frequently does have the same effect as the granting of the permanent relief requested by a plaintiff.
In the absence of showing a substantial need for temporary relief, the courts have been slow to grant preliminary relief that will dispose of the entire action for all practical purposes. (Yome v. Gorman, 242 N. Y. 395 [1926]). The reluctance on the part of courts to grant a motion for preliminary relief that will have the same effect as ultimate relief is based upon a desire to decide litigation only after a full hearing on' the merits and a fear that issuing the order might affect the parties during the action in such a way as to render any final judgment nugatory. However, there are situations in which the plaintiff should be granted a preliminary order in spite of the fact that it may have the effect of a permanent injunction. (Weinstein-KornMiller, N. Y. Civ. Prac., par. 6301.17.) One such situation is where the plaintiff demonstrates a clear right to permanent relief on the motion for preliminary relief. Thus, if prior litigation has established the plaintiff’s right to a permanent order, he should be granted a preliminary order even though it affords him the same relief as would a permanent order. (Mastantuono v. Scurachio, 82 N. Y. S. 2d 129, affd. without opinion 274 App. Div. 908.) In effect, the court in such cases grants summary judgment by granting the preliminary order. See Rose v. Brown (186 Misc. 553 [Sup. Ct., 1945]) wherein the court issued a mandatory preliminary injunction directing specific performance of a contract, which court action had the effect of giving the plaintiff all the relief he had sought in the action itself. Earlier, in Way v. Hayes (124 N. Y. S. 648 [Sup. Ct., 1910]), the granting of a preliminary order provided relief essentially equivalent to permanent relief. The court wrote (p. 649): “ A temporary injunction, which grants all the relief that can be obtained by a party at the end of a litigation, is never granted unless it be made to appear clearly to the court that the plaintiff’s contention is right in the main, and that his rights would be seriously injured by permitting the defendant to proceed as he is attempting or threatening to do.” (Italics added.)
*464 In the action sued herein, plaintiffs contend that the terms of all of the members of the Board of Supervisors elected on November 2, 1965 are to be limited to one-year terms because the present apportionment of the board violates the United States and New York State Constitutions. If the plaintiffs establish this contention on the trial of the action, the trial court will either order that a special election based upon a constitutionally acceptable apportionment be held at the General Election scheduled for November 8, 1966, or it may order the board to adopt weighted voting on a stopgap basis to permit the board more time to complete reapportionment. In the latter situation no special election would be held in 1966. The primary election in preparation for the general election of 1966 has been set by law for June 21, 1966, and the first day for the circulation of designating petitions for candidates seeking election to the board will therefore be April 5,1966.
Plaintiffs contend that unless this court undertakes to carry out and make effective a proper reapportionment to be completed by on or about March 8, 1966 and to be approved by on or about March 15, 1966, no such election can or will be held, because (a) the defendant Board of Supervisors is either unable or unwilling to speedily carry out such a reapportionment and (b) said board, allegedly speaking through its Chairman, does not intend to complete any such apportionment until May 1,1966.
Plaintiffs conclude that if a special election of Supervisors is ordered to be held on November 8, 1966, it is necessary for the defendant Board of Elections to commence forthwith to prepare and set in motion the several procedures appropriate thereto. Further, the plaintiffs argue that they and all persons similarly situated will be denied a vital part of the relief demanded in their complaint, i.e., to effectively reduce the tenure of the malapportioned Board of Supervisors to one year, unless this court itself promptly carries out a proper apportionment to be declared effective unless the defendant Board of Supervisors properly reapportions itself by March 8, 1966.
The questions presented on this motion are whether a preliminary mandatory order should issue requiring the Board of Supervisors to prepare immediately a valid apportionment plan prior to April 5, 1966, and requiring the Board of Elections to prepare the machinery for a special election of Supervisors in Erie County in 1966, should plaintiffs succeed in their main action after trial. CPLR 6301 indicates that this court may grant such an order in its discretion. In the exercise of that discretion, however, the court must take into account the adequacy of other remedies, the utility of an injunction, the preser *465 vation of the status quo, the fact that preliminary relief may grant the same as ultimate relief, whether plaintiff shows a clear right to relief, whether an irreparable injury will occur unless immediate relief is granted, and whether the public interest is affected by the court’s action. Applying these standards to the situation at hand, the following is apparent: first: Where temporary relief is granted, it must appear conclusively to the court that the underlying cause of action is well founded, and can be expected to prevail when trial is had. In this case, decisions of the United States Supreme Court in Baker v. Carr (369 U. S. 186 [1962]); Reynolds v. Sims (377 U. S. 533 [1964]), and W M C A v. Lomenzo (377 U. S. 633 [1964]),-clearly establish the Federal mandate that legislative apportionment must comply with standards which provide equal protection of the laws. This is true in local government bodies exercising legislative functions (Seaman v. Fedourich, 16 N Y 2d 94). (See Weinstein, The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government, 65 Col. L. Rev. 21 [1965].) The New York State Constitution is similarly applicable to such bodies and the New York Supreme Court has jurisdiction over actions brought to invalidate existing malapportioned voting arrangements in such bodies and is charged with the duty to devise suitable remedies to correct patent inequities. (See Seaman v. Fedourich, supra.) In brief, it is now an accepted proposition of law that Boards of Supervisors are required to comply with the Federal and State mandates for constitutional apportionments and this proposition of law is the basis of the action herein.
To date, reapportionment has been ordered by this court in six or more counties and usually on a motion for summary judgment for the reason that no triable issue of fact has been presented. Such relief has been directed in Broome County (Augostini v. Lasky, 46 Misc 2d 1058), in Monroe County (Matter of Goldstein v. Rockefeller, 45 Misc 2d 778), in Oneida County (Treiber v. Lanigan, 48 Misc 2d 434), in Onondaga County (Barzelay v. Board of Supervisors, Sup. Ct. Nov. 26, 1965, Lynch, J.), in Sullivan County (Shilbury v. Board of Supervisors, 46 Misc 2d 837), and as recently as January 7, 1966 in Westchester County, in an opinion by Mr. Justice Nolan, former Presiding Justice of the Appellate Division, Second Department, he stated that Supervisors must “ represent people, not trees or acres, and are elected by voters, not farms or cities or economic interests” (Town of Greenburgh v. Board of Supervisors, 49 Misc 2d 116,117).
*466 second; The verified complaint in this action sets forth the census figures for component towns and wards in Erie County as found by the decennial census Government in 1960, as follows: made by the United States
Towns Buffalo Wards Alden................................... ...... 7,615 1st 16,675 Amherst................................. 2nd 21,125 Aurora.................................. 3rd 19,573 Boston.................................. ...... 5,106 4th 14,914 Brant................................... ...... 2,290 5th 14,650 Cheektowaga............................. ...... 84,056 6th 16,590 Clarence................................. ...... 13,267 7th 19,352 Golden.................................. ...... 2,384 8th 16,721 Collins................................... ...... 6,984 9th 15,857 Concord................................. ...... 6,452 10th 19,799 Eden.................................... ...... 6,630 11th 21,938 Elma.................................... ...... 7,468 12th 20,388 Evans................................... ...... 12,078 13th 19,139 Grand Island............................. ...... 9,607 14th 23,521 Hamburg................................ ...... 41,288 15th 21,629 Holland.................................. ...... 2,304 16th 17,853 Lancaster................................ ...... 25,605 17th 22,220 Manila.................................. ...... 2,252 18th 20,395 Newstead................................ ...... 5,825 19th 24,136 North Collins............................. ...... 3,805 20th 19,743 Orchard Park............................. ...... 15,876 21st 26,845 Sardinia................................. ...... 2,145 22nd 19,472 Tonawanda.............................. ...... 105,032 23rd 21,670 Wales................................... ...... 1,910 24th 19,045 West Seneca.............................. ...... 33,644 25th 22,645 City of Lackawanna....................... ...... 29,564 26th 20,731 City of Tonawanda....................... ...... 21,561 27th 15,895 Totals............................... 532,521
County Total............................... 1,062,994
Although it is likely that these population figures have varied in the past six years, it is probable that a wide disparity continues to exist between these units of local government in Erie County. A gross inequity of representation obviously existed in 1960, as becomes evident when one compares the population in the Town of Hamburg (41,288) with that in the Town of Sardinia (2,145) indicating that Hamburg should properly have 19 Supervisors to 1 in Sardinia, and yet each township was and is entitled to 1 Supervisor with 1 vote. The point is even more dramatically presented by comparing the population of the Township of Tonawanda with the Township of Wales. In 1960 there were 105,032 persons in the Town of Tonawanda and 1,910 persons in the Town of Wales. An equality ratio here would require 55 Supervisors for Tonawanda to 1 Supervisor for *467 Wales, and yet, Tonawanda and Wales were and are each entitled to 1 vote under the present apportionment. This court does not reasonably anticipate a showing on the trial that residents of the Town of Tonawanda have migrated from Tonawanda in such numbers or that the Town of Wales has grown in such numbers as to establish population equality in 1966. However, if there are valid reasons for not reapportioning, the board will have an opportunity to present those reasons on the trial of the action itself.
In the meantime, to permit the status quo to continue in these disproportionate circumstances would be to permit a condition of rest to inflict irreparable injury upon the rights of these plaintiffs and those voters similarly situated throughout the County of Erie. Residents of the Towns of Tonowanda, Cheektowaga, Amherst, Hamburg and West Seneca would appear to suffer gross disparity in representation, not to mention citizens residing in the City of Buffalo.
Equity demands action! Although it is true that issue has not yet joined in this proceeding, plaintiffs in their verified complaints and in their sworn affidavits show a “ clear legal right ” to ultimate relief. The limits of that relief will be determined only after trial.
II.
BELIEF
Appreciating as we do the difficult task of reapportioning the Board of Supervisors prior to April 5, 1966, should the plaintiffs succeed in this litigation, we direct the board forthwith to prepare a constitutionally valid apportionment to be completed and made effective on and after March 15, 1966, if directed by future order of this court after trial. In Matter of Orans (47 Misc 2d 493 [Aug. 24, 1965, Sup. Ct., N. Y. County], affd. 24 A D 2d 217 [Dec. 9, 1965, 1st Dept.]) the court, (Cttlkin, J.) considered the same election time table as is before this court, and Justice Ctjlkik set a deadline for a new and proper reapportionment of the New York State Legislature to be concluded on February 1, 1966, knowing full well that under the State Constitution that body would not reconvene until the first week in January, 1966. On appeal to the Court of Appeals, that deadline has now been revised to February 15,1966. If the Legislature of the State of New York is expected to come into Federal compliance within 6 weeks, the County of Erie, only 1 of 62 component counties in the State, can certainly be constitutionally reapportioned by March 15, 1966. Similar procedure *468 was required in Butterworth v. Dempsey (237 F. Supp. 302 [1965]).
In the circumstances presented in this case, the trial court may very well find that the plaintiffs are entitled to the immediate relief and special election they seek, as the court did in the Treiber case (supra) where the court reduced the terms of members of the board in Oneida County to one year by its decision of November 30, 1965. In Oneida County, the Board of Supervisors, just as in Erie County, had set up a committee to handle the problems of reapportionment early in 1965. Explicitly considering- this fact as bearing upon the length of time the board had had to meet the issue, the court squarely held (Treiber, supra, p. 437) that “ continuation for two more years of the acute imbalance of representation of citizens in their county legislative body would not accord to these plaintiffs the timely, effective, and immediate relief to which they are entitled.” (The court went on to set a deadline of March 1, 1966 for the board to take proper action.)
However, a judgment in this case would be rendered ineffectual if the Board of Supervisors and the Board of Elections fail to provide adequately for reapportionment and a special election while the litigation is progressing. If the Board of Supervisors is found to be unconstitutionally apportioned, large segments of the population will have been effectively denied equal representation in their legislative body as presently constituted. Such a constitutional deprivation must not be tolerated for one full year if it can reasonably be avoided.
In this setting, we direct that the Board of Supervisors prepare with all deliberate speed a valid apportionment plan to be made effective on and after March 15, 1966, if so ordered by the trial court after hearing on the merits. Further, the Board of Elections is directed to be prepared to make possible special election of Supervisors at the general election of November 8, 1966, should the plaintiffs succeed in the principal action. Further, we direct the board to prepare a plan for weighted voting which may be ordered after trial as a stopgap measure to allow the board further time to reapportion. We further direct that upon joinder of the issues herein, the action be given a preference for trial and in the public interest, be tried immediately.
It seems likely that weighted voting will be held to comply with Federal constitutional requirements when it is (1) adopted in good faith (2) to meet special situations (3) the discrepancies in voting power are not extreme. (Weinstein, County Reapportionment, supra, pp. 41, 42.)
*469 Although the New York Attorney-G-eneral has concluded that the State Constitution would bar weighted voting in the State Legislature even as a stopgap method, at the local level it has been utilized without serious difficulty in Nassau County since 1938. (Weinstein, supra, p. 44.) In Maryland Committee v. Tawes (228 Md. 412, 439 [1962], revd. 377 U. S. 656 [1964]), the Maryland court suggested in dictum that a reapportionment act might 1‘ adjust the number of votes or the fractional votes to be cast by the members (of the Legislature) so as to achieve the same relative voting strength as if an actual reapportionment of membership were made.” Weighted voting was approved as a stopgap measure only in Thigpen v. Meyers (231 F. Supp. 938 [U. S. Dist. Ct., W. D. Wash, 1964]). In that case, the court recognized that chaos and confusion might result from weighted voting but accepted it as an expedient. Weighted voting was considered a favorable stopgap device in Shilbury v. Board of Supervisors, supra, p. 936. (See Weinstein, County Reapportionment, supra, pp. 41, 42.) We emphasize that this procedure could be ordered only as a stopgap but the board must be prepared to deliver it if ordered by the trial court.
Defendant is allowed five days from service of an order based upon this decision within which to answer or otherwise move.
So long as this action is progressing to immediate trial and the directives herein contained are honored in good faith, the court declines in the exercise of its discretion to itself undertake a constitutionally valid reapportionment at this time, or to appoint a Referee or Referees to do so in its behalf. Apportionment is primarily a legislative rather than a judicial function. We have complete confidence in the Board of Supervisors’ ability to do so without further court interference at this time.
This court shall retain jurisdiction of the action and entertain an application by any of the parties for a review of any apportionment plan that the defendant Board of Supervisors may adopt.
We do not pass upon the question raised by plaintiffs as to whether the present Supervisors are entitled to one-year or two-year terms. This issue will be decided by the trial court after trial of the principal action or ordered by virtue of summary judgment after issue is joined.
On notice of three days, a proposed order should be submitted:
1. Denying defendant Board of Supervisors’ motion to dismiss the application for temporary relief herein.
2. Denying at this time plaintiffs’ application to have this court forthwith undertake a valid apportionment by appointing a Referee or Referees to do so.
*470 3. Directing the Board of Supervisors of Brie County to prepare forthwith a constitutional apportionment to be adopted after trial upon order of the trial court.
4. Directing the Board of Supervisors of Brie County to prepare a plan of weighted voting to be adopted on a stopgap basis if directed by the trial court.
5. Directing the Board of Elections of Erie County to take all necessary steps to prepare for and insure a Special Election of Supervisors in Erie County when and if directed by the trial court.
6. Directing immediate trial herein after the joinder of issues.
7. Extending the defendants ’ time to answer herein five days after entry and service of an order based on this memorandum.
8. Providing this court shall retain jurisdiction of the action and entertain application by any party for a review of any apportionment plan or plan of weighted voting that the defendant Board of .Supervisors may adopt.
No costs are allowed on these motions.