Richard J. Cardamone, J.
This court, by its decision dated May 17, 1966, determined that the present organization of the Herkimer County Board of Supervisors violates the New York State Constitution (art. I, § 11) and the United States Constitution (14th Arndt.). An order entered thereon directed the Board of Supervisors to report to this court on a proposed constitutional plan for the reapportionment of Herkimer County no later than June 15, 1966. By Resolution No. 98, the board on June 6, 1966 adopted, by a 14-to-7 vote, a plan known as Plan “ B ”, which provides for weighted voting, an increase of 4 members (to a 25-member board) and no change in existing supervisory districts. Under this plan, each town is allowed one vote or “ point ” per 100 people or fraction thereof, providing that no one Supervisor’s vote is to be worth more than 12 times the vote of the supervisor of the smallest town. Thus, the 3 supervisors from German Flatts, the largest town, would cast 158 votes; Herkimer’s two representatives would cast 116 votes; and Ohio and Norway, the smallest towns, would each cast 5 votes. The total votes possible to be cast by the Herkimer County Board of Supervisors under Plan “ B ” would be 673 votes.
Herkimer County, similar to many counties in New York State, is a non-charter county. That is, it has not adopted the charter form of government (Municipal Home Rule Law, art. 4). The State Legislature did not pass the bill pending before it at its 1966 session which would have enabled non-charter counties to reapportion themselves. The board has previously appointed a reapportionment committee which has been considering the redistricting of Herkimer County for over a year. During the course of the oral presentation before the court in May, 1966, Plan “ A ”, evolved by that committee, was shown to the court, Plan “ A ” provides for 19 supervisory districts *931 divided approximately equally (average: 3493 voters per district). It reduces the membership of the board from 21 to 19 by grouping together some of the' smaller contiguous townships in Herkimer County into supervisory districts without violating any existing town lines. That plan and the map accompanying it indicates the amount of detailed study which has heretofore been given this problem by the Herkimer County Board.
With this background, pursuant to this court’s order of May 1966 the Herkimer County Board of Supervisors presented this court in June, 1966 with Plan “ B ” of reapportionment providing for permanent weighted voting. On June 21, 1966, petitioners appeared in opposition, the Herkimer County Attorney in favor, and the Attorney-General of the State of New York appeared but took no position on Plan “ B ”.
The decision of this court follows:
The question simply posed is whether the imposition of weighted voting as ' a method of reapportionment is a constitutionally acceptable plan.
The conception of political equality now expressed in the words “one person, one vote” (Gray v. Sanders, 372 U. S. 368, 381 [1963]) guarantees that legislative seats, including those below the level of the State Legislature (Seaman v. Fedourich, 16 N Y 2d 94 [1965]) be apportioned on the basis of population (Reynolds v. Sims, 377 U. S. 533, 568 [1964]). Implicit in these actions, generally instituted by citizen voters, is that the use of the word “votes” refers to the votes of each individual citizen and not to the votes cast by elected legislators (Banzhaf, Weighted Voting Doesn’t Work: A Mathematical Analysis, 19 Rut. L. Rev. 317, 321 [Winter, 1965]). It is not the equality of the votes cast at the legislative level, the remedy offered by weighted voting, that meets the test of “ one man, one vote” but “substantial equality of population” which is required (Reynolds v. Sims, supra, p. 559).
Most courts confronted with weighted voting plans and having to make some determination with respect to it have approved it only as an “ interim ”, “ temporary ”, or “ stopgap ” measure until an acceptable permanent plan has been adopted (Shilbury v. Board of Supervisors of County of Sullivan, 46 Misc 2d 837 [Sup. Ct., Sullivan County, 1965], affd. 25 A D 2d 688 [3d Dept., 1966]; Seaman, v. Fedourich, 47 Misc 2d 26 [Sup. Ct., Broome County, 1965]; Treiber v. Lanigan, 48 Misc 2d 434 [Sup. Ct, Oneida County, 1966], mod: 25 A D 2d 202 [4th Dept., 1966]; Graham v. Board of Supervisors of Erie County, 49 Misc 2d 459 [Sup. Ct., Erie County, 1966]; Dona v. Board of Super *932 visors of County of St. Lawrence, 48 Misc 2d 876 [Sup. Ct., St. Lawrence County, 1966]). A number of other State courts have rejected weighted voting (Brown v. State Election Bd., 369 p. 2d 140 [1962, Old.]; Cargo v. Campbell, No. 33273, U. S. Dist. Ct., Santa Fe County, N. M., 1964; Jackman v. Bodine, 43 N. J. 491), and doubt has been cast upon its validity in a Federal Court (WMCA, Inc. v. Lomenzo, 238 F. Supp. 916 [U. S. Dist. Ct., S. D. N. Y. 1965]).
Weighted voting is not constitutionally acceptable as a permanent plan of reapportionment. In almost all cases, weighted voting does not do the one thing which everyone assumes that it does, i.e., it does not allocate voting power equally to legislators in proportion to the population that each represents, because voting power is not proportional to the number of votes a legislator may cast. As Mr. Banzhaf explains: “ This [equality by weighted voting] is based on a false assumption that the ability of a citizen voter to be represented by his legislator varies inversely with the population of his district. Actually, it varies inversely as the square root of the population of his district”. (Banzhaf, Letter, dated July 6, 1966, Re: Analysis for Weighted Voting Plan, Herkimer County [p. 3]). Voting power is defined as the ability of a legislator by his vote to effect the passage or defeat of a measure pending. (Banzhaf, Weighted Voting Doesn’t Work, supra, p. 331). In this connection, with the consent of all counsel, a mathematical analysis was obtained by counsel for the Attorney-General of New York from Mr. Banzhaf and clearly indicates the grave disparities which exist under weighted voting as proposed in Plan “ B ”. For example, the Town of Newport has approximately 10% less than the mean or unweighted average of the voting power based upon its population, but more than one 100% more voting power than the residents of the Town of Ohio. A voter in the Town of Manheim has a voting power over 60% greater than the average voter in Herkimer County and 260% more power in his vote than a citizen in the Town of Ohio. The seven representatives from the three largest communities, German Flatts, Herkimer and the City of Little Falls, cast between them 364 or well over half of the 673 total votes. The other 18 members of the board will be voices without impact or effect on legislation when these 7 representatives agree on any issue. To plunge into a “ mathematical quagmire ” (Baker v. Carr, 369 U. S. 186, 268 [1962]), understood only by experts using computers, does not appear to this court to be the path leading to equal representation of citizen voters in our local legislative bodies.
*933 Serious human and practical problems exist in a system of weighted voting which limit its usefulness on a permanent basis. Under Plan “B ” before the court, one of the two legislators from Little Falls casts 45 votes as measured against a legislator from the Town of Ohio who casts 5 votes. The question arises as to whether a legislator from Little Falls is permitted to make 9 times as many speeches, 9 times as many telephone calls and have 9 times as much patronage? When they serve on a committee together, does one legislator have 9 times as much power on that committee ? If the weighted system is not followed on committee assignments then the disproportion which reapportionment seeks to correct is only partially corrected. If it is, meaningful representation by those who cast a small number of votes is lost. Weighted voting may also diminish the power of the most powerful personality in the group in cases where he has a relatively small vote. A deliberative, democratic body should require the application of the concept of “ one man, one vote ” within the body itself so that a rational debate amongst the representatives may take place. All of the personal attributes and characteristics of the elected legislator, his diligence, intelligence, ability, practicality, interest and knowledge concerning pending legislation should not be frustrated by the weight of a colleague who may be able to cast 8, 10 or 12 times his vote on any given issue. (Weinstein, The Effects of the Federal Reapportionment Decision on Counties and Other Forms of Municipal Government, 65 Col. L. Rev. 21, 46 [1965].)
Finally, the Court of Appeals has now clearly held that weighted voting may be approved “solely as a temporary expedient ”; but that a permanent plan must be “ based on the principle of ‘one man, one vote’”. (Graham v. Board of Supervisors of Erie County, 17 N Y 2d 866.)
This court concludes that Plan “ B ” presented to it does not meet the “one person, one vote” test and is, therefore, unconstitutional. The Board of Supervisors of Herkimer County is directed to draft a permanent plan of reapportionment by August 15,1966, and to submit it for the approval or disapproval of the electorate at the November 1966 election.