I. William BIANCHI, Jr. and Quentin B. Sammis, Plaintiffs,

and

Town of Huntington, Plaintiff-Intervenor,

v.

BOARD OF SUPERVISORS OF SUFFOLK COUNTY, NEW YORK, Defendant,

and

Town of Southampton, Town of East Hampton, Town of Riverhead, Town of Southold, and Town of Shelter Island, Robert T. Cameron, as Supervisor of the Town of Southampton, Edward V. Ecker, as Supervisor of the Town of East Hampton, Robert B. Vojovoda, as Supervisor of the Town of Riverhead, Lester M. Albertson, as Supervisor of the Town of Southold, and Evans K. Griffing, as Supervisor of the Town of Shelter Island, Defendants-Intervenors.

Civ. A. No. 62–C–821.

United States District Court
E. D. New York.

Aug. 4, 1966.

Cahn & Cahn, Huntington, N. Y., for plaintiffs.

George W. Percy, Jr., Riverhead, N. Y., for defendants.

Smith, Tasker, Finkelstein & Lundberg, Riverhead, N. Y., for intervenor defendants.

Before MOORE, Circuit Judge, and BRUCHHAUSEN and DOOLING, District Judges.

PER CURIAM.

By order dated June 15, 1966, this court directed the Board of Supervisors of Suffolk County to submit a plan or plans for election of such Board in a manner eliminating the voting malapportionment in the election of the Board as presently constituted. Thereafter, the Board caused to be submitted various plans together with a resolution indicating its preference as to priority, namely:

1. The Hanse plan and modifications thereof referred to in Resolution No. 459–1966 as Plans A–E. Plan A is essentially a weighted vote plan preserving, however, the present method under which the Town Supervisors from each of the ten towns constitute the County Board of Supervisors. Plans B–E would add to the Board additional county supervisors depending on the population of the towns and assigning the number of votes on the Board in accordance with the populations of the towns electing the supervisors.

2. The Dominy plan (Resolution No. 456–1966) provides for additional Supervisors to be added to the existing Board, one to be elected from each of the Assembly Districts (now six) in the county.

3. The Albertson plan (Resolution No. 463–1966) calls for the election of ten Supervisors by the county at large for terms of four years, five to be elected every second year.

4. The Ecker plan (Resolution No. 465–1966) provides for a bicameral legislative body with the present method of Board construction being preserved for an Upper House and a Lower House to be elected at large or from representative districts.

Objections were filed by plaintiffs and the Town of Huntington (1) to the plan (Resolution No. 456) calling for additional Supervisors for Assembly Districts; (2) to Plan A (weighted voting); (3) to an election at large plan (Resolution No. 463); and (4) the bicameral plan (Resolution No. 465), and plaintiffs and the Town of Huntington moved to declare their probable unconstitutionality and to declare the probable constitutionality of Plan E (Resolution No. 459) which provides for a number of legislators (supervisors) from each town equal to the quotient obtained by dividing the town's population by 50,000, the number of votes to be shared by such representatives to be obtained by dividing each town's population by 2,500.

The defendants-intervenors being the towns of Southampton, Easthampton, Riverhead, Southold and Shelter Island and the respective Supervisor defendants moved to declare the probable unconstitutionality of Plans A–E and to declare the probable constitutionality of the election at large plan (Resolution No. 463) and the additional supervisors for Assembly Districts plan (Resolution No. 456).

Hearings on the objections were held on July 28, 1966.

At the outset it is the opinion of the court that the plan (Resolution No. 456–1966) which would add to the present Board six Supervisors, one each from the now existing Assembly Districts, and the plan (Resolution No. 465–1966) providing for a bicameral legislative body for the County do not meet the requirements for constitutionality as set forth in the Supreme Court decisions on reapportionment. The court is also of the opinion that Plan A (Resolution No. 459–1966) is defective in that it provides for straight weighted voting by the Supervisors on the Board as presently constituted. The court is reinforced in this conclusion by the recent decision of the New York Court of Appeals in Graham v. Board of Supervisors, Erie County, New York, etc., 49 Misc.2d 459, 267 N.Y.S.2d 383; 25 A.D. 2d 250, 269 N.Y.S.2d 477, modified by Court of Appeals, 18 N.Y.2d 672, 273 N.Y.S.2d 419, 219 N.E.2d 870 (1966) wherein it approved such a weighted voting plan "but solely as a temporary expedient", stating that "Although weighted voting has inherent defects, it does provide more of the attributes

of equal representation than the existing apportionment of the Erie County Board of Supervisors." The Court of Appeals then proceeded to direct the Board "to draft a permanent plan, based on the principle of 'one man, one vote,' by September 1, 1966, and to submit it for the approval or disapproval of the electorate at the November 1966 election."

Although straight weighted voting may be defective, the Plans B–E by adding an additional member or additional members to the Board dependent upon population and by ratably dividing between the Supervisors from each town the votes given to the respective towns in accordance with units of population may avoid the defects noted by the New York Court of Appeals and also found in Plan A. As to the Albertson Plan, the election of its legislative body by the County at large would appear to resolve any difficulties as to mere equality of vote; there may be other factors than mathematical equality to be considered. However, the Plan is probably, if marginally, constitutional.

The present order of the Court will, then, be in substance that the Board adopt a Local Law modifying the present County Charter, so as to eliminate the present imbalance in the voting strength of the members of the present Board as related to the population of the towns represented by them to comply with the requirements of the Fourteenth Amendment of the United States Constitution and Article I, sections 1 and 11 of the New York State Constitution and the decisions of the Supreme Court on reapportionment and that the Board cause such plan or plans to be submitted to the qualified electors of the County at the general election to be held on November 8, 1966.

Such Local Law may present to the qualified voters inconsistent (see Municipal Home Rule Law, McKinney's Consol. Laws, c. 36–A, § 33 sd. 9) plans, together with a clear provision that inconsistent plans may be voted for by the elector and that the elector may vote for one plan or more and against one or more or all alternative plans, and that if one or more plans than one receive the required majority, the plan receiving the largest affirmative vote shall prevail. Such Local Law must be such that if it is made effective by the vote of the electors at the November 8, 1966 election, it will result in the election at or before the general election of 1967 of a Board of Supervisors to take office on or before January 1, 1968.

Nothing herein said and no action taken hereunder shall be deemed to preclude any appropriate action by the Board or any member thereof in the event that the present decision of this court dated February 15, 1965 now on appeal to the Supreme Court is reversed and such Local Law may provide for a termination of its effectiveness in the event of reversal.

This opinion constitutes the order in this case.