Mario Pittoni, J.
Plaintiffs sued defendant board in 1968 for a judgment declaring defendant board to be illegally apportioned, and the State Supreme Court, the Appellate Division of the Supreme Court, and the Court of Appeals all held the apportionment of defendant board unconstitutional (Franklin v. Mandeville, 57 Misc 2d 1072, affd. 32 A D 2d 549, mod. 26 N Y 2d 65 [Jan. 14, 1970], mot. to clarify and/or modify den. 28 N T 2d 988 [May 26, 1971]). The Court of Appeals, also ordered defendant board to adopt a valid plan ‘ ‘ within six months after public announcement of the enumeration of the inhabitants of Nassau County in .the Federal census of 1970 ” (p. 70).
The litigants dispute the starting date of that six-month period commanded by the Court of Appeals. However, no matter whose starting date we adopt, defendant board did not adopt a plan within six months commanded by the Court of Appeals. Following the Court of Appeals decision, defendant board did not introduce its new plan until August 14, 1972, nor adopt it until September 25, 1972. Therefore, plaintiffs say, not having acted within the specified time, defendant board has forfeited the right to adopt a plan -of its own and the court should appoint a nonpartisan commission to prepare a plan of apportionment.
Plaintiffs also say that the plan adopted by defendant board on September 25, 1972, is only a warmed over version of the one previously held unconstitutional by the Court of Appeals and is, therefore, also unconstitutional. Plaintiffs fortify their position by saying that ‘ ‘ weighted voting ” as in this case is ■another violation of that cliched ‘ ‘ one man-one vote ’ ’ rule developed by the United States Supreme Court within the last decadet
The previous plan found unconstitutional by the Court pf *105 Appeals had been in effect since 1939. It provided for weighted voting whereby the Supervisors of the three towns and the two cities should have a number of votes equal to one vote for each 10,000 inhabitants which they represent. Fractional votes were not to be counted. For calculation purposes, each Hempstead Supervisor was deemed to represent one half of the town’s population. There was one proviso, however, namely, that the Supervisor or Supervisors of no town or city could cast more than 50% of the votes. This was the system found unconstitutional in Franklin v. Mandeville {supra).
The Court of Appeals in Franklin v. Mandeville (26 N Y 2d 65, 69, supra) stated as follows: “ The provision has survived two attempts at reapportionment, proposals therefor having been defeated in referendums conducted in 1965 and 1967; and clearly violates the one man, one vote principle. The phenomenal population growth in Hempstead, as in Nassau County generally, points up the inequality created and perpetuated by the charter provision. Not only are the Hempstead Supervisors presently barred from exercise of a majority vote, but section 104 would continue to deprive them, or the residents of any other town or city subsequently containing a majority of the county population, from majority representation, regardless of how great their majority may presently be or may in future become. This is the vital factor which distinguishes the case from Abate v. Mundt (25 N Y 2d 309), recently decided.”
The new plan adopted September 25, 1972, is embodied in Local Law No. 13-1972. It continues a structure of town and city Supervisors sitting as board members, the mandatory decennial reallocation of votes, and use of a weighted voting system. It also continues the prohibition against fractional votes and against a Supervisor splitting his vote.
In fixing the standards for allocating votes, the new law provides that the ‘ ‘ voting power ” of a Supervisor shall be measured ‘ ‘ by the mathematical possibility of his casting a decisive vote on a particular matter.” It then equates a town’s or city’s ‘ voting power ’ ’ with that of its Supervisor, or, in the case of Hempstead, with the total voting power of its two Supervisors.
Furthermore, the percentages of voting power ‘ ‘ shall approximate ” the corresponding percentages of population and it further guarantees that no town or city shall be wholly without voting power.
finally, in establishing its meral standards for the system, the new plan requires that in preparing each reapportionment of votes defendant board shal; employ an independent com *106 puterized mathematical analysis ’ ’ and any other methods which shall “ most nearly analyze ” the percentages of voting power and population.
Paragraph 5 of the new law turns from general standards to specific allocation of votes based upon the 1970 census data. In arriving at these numbers, defendant board followed the standards of paragraph 4 and worked with the aid of “ an independent computerized analysis. ’ ’ The total number of votes allocated was 130, divided as follows:
Hempstead 35 Hempstead 35 Oyster Bay 32 North Hempstead 23 Long Beach 3 Grlen Cove 2
The number of votes required for passage of a measure requiring a “ majority ” vote was fixed at 71 and for á “ two-thirds ” measure at 92. With these mathematical bases the computer then calculates the number of decisive votes each Supervisor may cast, then the respective percentages of voting power and, finally, for comparison purposes, the corresponding percentage of population.
Summarized in the “ majority ’’plan, the relevant percentages and resulting deviations are as follows:
Percentages Percentages of of population voting power Deviation Hempstead (total) 56.2 54.6 -1.6 Oyster Bay 23.1 20.4 -2.7 North Hempstead 16.5 13.0 -3.5 Long Beach 2.3 5.6 +3.3 Grlen Cove 1.8 5.6 +3.8 For the ‘ ‘ two-thirds ” vote, the figures are as follows: Percentages Percentages of of population voting power Deviation Hempstead (total) 56.2 50.0 -6.2 Oyster Bay 23.1 20.8 -2.3 North Hempstead 16.5 20.8 +4.3 Long Beach 2.3 4.2 +1.9 Grlen, Cove 1.8 4.2 +2.4
*107 This, then, is the new plan that defendant hoard says follows the standards set in Iannucci v. Board of Supervisors of County of Washington (20 N Y 2d 244). This is the plan now under attack as unconstitutional.
Clearly this plan is a strained attempt to keep the old unconstitutional apportionment, tailored here and there to fit the court-mandated minimal requirements. But defendant board still fails to meet the requirements. The new September 25, 1972, plan, by giving Hempstead 70 votes and requiring 71 votes for a majority, allows Hempstead about 54% of the votes but requires about 54.6% of the votes to carry. This requires at least another vote from another municipality on defendant board to carry, even though Hempstead has 56.27 % of the total county population. In short, under the plan now adopted, the Hemp-stead Supervisors are still barred from exercising a majority vote (Franklin v. Mandeville, 26 N Y 2d 65, 69, supra).
Furthermore, adopting the ‘ ‘ voting power ’ ’ concept it cannot be said that it is “ mathematically possible for every member of the legislative body to cast the decisive vote on legislation in the same ratio which the population of a constituency bears to the total population ’ ’; nor can it be said that his voting power approximates ‘ ‘ the power he woud have in a legislative body which did not employ weighted voting ” (Iannucci v. Board of Supervisors of County of Washington, supra, p. 252).
Also, the City of Cien Cove is given voting power greater than three times its share of its population, and voting power equal to the City of Long Beach, which has one-third greater population than the City of Cien Cove. Also, these two small cities, smaller than many villages in Nassau-County, have greater voting power than they are entitled, to the detriment of the voting powers of the three towns.
Hempstead, whose population is 56.27% of the county, is deprived of 11.14% of the power to which it is entitled, Oyster Bay is deprived of over 11% of the power to which it is entitled, and North Hempstead is given 26.5% more power than it should receive because of its population.
The redistribution of voting power is even more lopsided when a two-thirds majority is required. The newly adopted plan requires 92 votes out of 130, whereas two thirds of the vote should require only 87 votes.
County Executive Ralph Caso stated the difficulty with the present plan in his veto message when he said:
In effect, the proposed law would retain the present Board
of Supervisors without material change. At the time of the *108 Franklin decision, the population of the Town of Hempstead constituted 57.12% of the county population hut Hempstead’s two representatives on the Board of Supervisors constituted hut 49.6% of the Boards vote.
‘ Under the proposed plan, the Hempstead supervisors would be allocated 70 votes out of a total of 130 to reflect their post-1970 census population of 55.6%, and yet, by another provision of the plan, they would again be denied the majority control. This provision redefines ‘ majority ’ to mean 71 votes out of 130, rather than the 66 votes which constitutes a mathematical majority. Similarly two-thirds ’ vote is defined as 90 votes rather than 86.
The proponents of the local law urge that the amendments now contain a constitutionally valid plan of reapportionment when considered in terms of voting power ’ as determined by a computer.
While weighted voting is not illegal per se, the mathematical gyrations necessary to preserve some effective voting power for the smaller political units represented on the Board require the destruction of principles of majoritarean democracy. And, while this principle is not inviolate in those circumstances where a practical and rational basis exists for deviation, it cannot be ignored in the face of viable alternatives.
To say that a majority is not a majority for the mere sake of preserving one of many available forms of reapportionment is an unnecessary debasement of the rights of the voters.”
Moreover, the present weighted voting system is attacked as invalid. Both sides have quoted and paraphrased from various high court decisions to draw inferences in their favor. Neither side has offered any United States Supreme Court or New York Court of Appeals decision that affirmatively and definitively supports either position under our Constitutions. Both sides stress cautious language uttered by the New York Court of Appeals in Seaman v. Fedourich (16 N Y 2d 94), Graham v. Board of Supervisors of Erie County (18 N Y 2d 672), Iannucci v. Board of Supervisors of County of Washington (20 N Y 2d 244, supra), Town of Carmel v. Board of Supervisors of Putnam County (27 N Y 2d 975).
One thing the Court of Appeals has decided: that weighted voting is acceptable solely as a temporary [interim] expedient ” (Graham v. Board of Supervisors of Erie County, supra, p. 674; Town of Carmel v. Board of Supervisors of Putnam County, supra). In both cases, there was strong emphasis that this was solely a temporary interim expedient. Thus, although *109 the New York Court of Appeals did not affirmatively say that the weighted voting system is invalid, that conclusion is clear from its strong language.
Defendant board has divided 54% votes evenly between two Hempstead Supervisors and the other votes very unevenly among the other four Supervisors. This prevents these legislators from individually and substantially having the same influence as the others. Clearly, one or two Supervisors with heavy weighted votes or voting power could always stifle the votes or the influences of all the others. This would be particularly true not only in actual voting but in committees, caucuses, influences with other departments of government and other activities included in proper representations of and obligations to constituents.
Mr. Justice Card amone, now a member of the Appellate Division, Fourth Department, clearly stated the defect of weighted voting in Morris v. Board of Supervisors of Herkimer County (50 Misc 2d 929, 931-933):
“ The question simply posed is whether the imposition of weighted voting as a method of reapportionment is a constitutionally acceptable plan.
“ The conception of political equality now expressed in the words ‘ one person, one vote ’ (Gray v. Sanders, 372 U. S. 368, 381 [1963]) guarantees that legislative seats, including those below the level of the State Legislature (Seaman v. Fedourich, 16 N Y 2d 94 [1965]) be apportioned on the basis of population (Reynolds v. Sims, 377 U. S. 533, 568 [1964]). Implicit in these actions, generally instituted by citizen voters, is that the use of the word ‘ votes ’ refers to the votes of each individual citizen and not to the votes cast by elected legislators (Banzhaf, Weighted Voting Doesn’t Work: A Mathematical Analysis, 19 But. L. Bev. 317, 321 [Winter, 1965]). It is not the equality of the votes cast at the legislative level, the remedy offered by weighted voting, that meets the test of one man, one vote ’ but ‘ substantial equality of population ’ which is required (Reynolds v. Sims, supra, p. 559).
‘ ‘ Most courts confronted with weighted voting plans and having to make some determination with respect to it have approved it only as an ‘ interim ’, ‘ temporary ’, or ‘ stopgap ’ measure until an acceptable permanent plan has been adopted (Shilbury v. Board of Supervisors of County of Sullivan, 46 Mise 2d 837 [Sup. Ct., Sullivan County, 1965], affd. 25 A D 2d 688 [3d Dept., 1966]; Seaman v. Fedourich, 47 Misc 2d 26 [Sup. Ct., Broome County, 1965]; Treiber v. Lanigan, 48 Misc 2d 434 *110 [Sup. Ct., Oneida County, 1966], mod. 25 A D 2d 202 [4th Dept., 1966]; Graham v. Board of Supervisors of Erie County, 49 Misc 2d 459 [Sup. Ct., Erie County, 1966]; Dona v. Board of Supervisors of County of St. Lawrence, 48 Misc 2d 876 [Sup. Ct., St. Lawrence County, 1966]). A number of other State courts have rejected weighted voting* (Brown v. State Election Bd., 369 P. 2d 140 [1962, Oída.]; Cargo v. Campbell, No. 33273, U. S. Dist. Ct., Sante Fe County, N. M., 1964; Jackman v. Bodine, 43 N. J. 491), and doubt has been cast upon its validity in a Federal Court (WMCA, Inc. v. Lomenzo, 238 F. Supp. 916 [U. S. Dist. Ct., S. D. N. Y. 1965]).
“ Weighted voting is not constitutionally acceptable as a permanent plan of reapportionment. In almost all cases, weighted voting does not do the one thing which everyone assumes that it does, i.e., it does not allocate voting* power equally to legislators in proportion to the population that each represents, because voting power is not proportional to the number of votes a legislator may cast. * * *
“ Serious human and practical problems exist in a system of weighted voting which limit its usefulness on a permanent basis. Under Plan ‘ B ’ before the court, one of the two legislators from Little Falls casts 45 votes as measured against a legislator from the Town of Ohio who casts 5 votes. The question arises as to whether a legislator from Little Falls is permitted to make 9 times as many speeches, 9 times as many telephone calls and have 9 times as much patronage? When they serve on a committee together, does one legislator have 9 times as much power on that committee? If the weighted system is xiot followed on committee assignments then the disproportion which reapportionment seeks to correct is only partially corrected. If it is, meaningful representation by those who cast a small number of votes is lost. Weighted voting may also diminish the power of the most powerful personality in the group in cases where he has relatively small vote. A deliberative, democratic body should require the application of the concept of ‘ one man, one vote ’ within the body itself so that a rational debate amongst the representatives may take place. All of the personal attributes and characteristics of the elected legislator, his diligence, intelligence, ability, practicality, interest and knowledge concerning pending legislation should not be frus-^ trated by the "weight of a colleague who may be able to cast 8, 10 or 12 times his vote on any given issue. (Weinstein, The Effects of the Federal Reapportionment Decision on Counties *111 and Other Forms of Municipal Government, 65 Col. L. Rev. 21, 46 [1965].)
“Finally, the Court of Appeals has now clearly held that weighted voting may be approved solely as a temporary expedient ’; but that a permanent plan must be ‘ based on the principle of one man, one vote ’. (Graham v. Board of Supervisors of Erie County, 17 N Y 2d 866.) ”
A telling blow was struck at weighted voting right here in Nassau County in December, 1966, when the Commission of Governmental Revision of Nassau County, a nonpartisan body appointed by two County Executives, made its report to the Board of Supervisors. It stated (p. 9): “weighted voting is not the equivalent of one-man-one-vote equal representation; it stifles the deliberative nature of the decision-making processes; it limits the effectiveness of the interchange of persuasive debate; it places undue emphasis upon the individual supervisors * * * related not to the quality of their ideas but to the weight of their vote. We believe that the deliberative, legislative and decision-making processes of the Board of Supervisors require that the relationship of its members towards one another be that of equals ”.
Thus, from the standpoint of ordinary votes, from the standpoint of voting power and from the standpoint of weighted voting, the plan adopted September 25, 1972, by defendant board does not comply with the requirements set by the New York Court of Appeals.
The attorney for defendant board points out, and properly so, that the thinking of the United States Supreme Court is becoming more crystallized against any further changes in the area of apportionment. I recognize that. I also recognize the fact that there will be a tremendous change in the New York Court of Appeals starting January 1, 1973. However, I must analyze and render my decision on the basis of the binding law already written by the higher courts. It is not within my province to decide this case in anticipation of how I think the new courts will decide it nor on what I think the law should be.
All parties have given me learned dissertations to persuade or dissuade me a? to appointing a nonpartisan commission to prepare a valid plan of apportionment. I could hold that defendant board, not having adopted a valid plan within the limit set by the New York Court of Appeals, has forfeited the right to present another plan at this late date. I recognize, against this, that the court should not interfere with a legislative function unless the legislative body refuses or fails to *112 act within a reasonable time. Thus, again, I could hold that defendant board has not done so and again that the board has forfeited the right to present another plan. However, defendant board consists of honorable men who are zealous in their attempt to do justice for the people of Nassau County. Defendant board stated in its September 25,1972, resolution as follows: “ whereas, should the Court disagree with the Board’s view as to validity of the plan hereinafter proposed, it is the intention of this Board then to propose within sixty days after the Court’s determination becomes final a new alternative plan of representation based upon a system not utilizing weighted voting ”.
I am satisfied that defendant board will adopt such a new plan as mentioned above within the 60 days after the order to be entered herein.
Defendant board’s application for approval of the reapportionment plan incorporated in Local Law No. 13-1972 and adopted by defendant board on September 25, 1972, is denied. A.s shown above, it is unconstitutional.
Plaintiffs’ application for an order appointing a nonpartisan commission to prepare and submit to the court a plan of apportionment and voting for the Nassau County Board of Supervisors is denied. I am satisfied defendant board will adhere to its pledge of September 25, 1972, to propose a new plan “ based upon a system not utilizing weighted voting ” within 60 days of my final determination.
All other applications not specifically mentioned are denied.
For the benefit of all parties concerned and especially for the people of Nassau County, defendant board is directed to perfect an appeal, if so advised, Avith reasonable haste.